**David A. HUMPHREYS,**
**Plaintiff–Appellant,**

v.

**BELLAIRE CORPORATION,**
**Defendant–Appellee.**

No. 91–3584.

United States Court of Appeals,
Sixth Circuit.

Argued March 16, 1992.

Decided June 4, 1992.

Melvin P. Stein (argued and briefed), Kuhn, Engle & Stein, Pittsburgh, Pa., J. Mark Costine, Costine & Costine, St. Clairsville, Ohio, for plaintiff-appellant.

James A. Rydzel (argued and briefed), Robert S. Gilmore, Jones, Day, Reavis & Pogue, Cleveland, Ohio, David C. Crago, Jones, Day, Reavis & Pogue, Columbus, Ohio, for defendant-appellee.

Before BATCHELDER, Circuit Judge; LIVELY, Senior Circuit Judge; and TAYLOR, District Judge.*

BATCHELDER, Circuit Judge:

Plaintiff-appellant, David Humphreys, who was discharged after almost ten years of employment, claimed in the district court that his discharge constituted a breach of employment contract and a violation of ERISA, and that it violated principles of promissory estoppel. The district court granted summary judgment for the defendant-appellee, North American Coal Corporation,[1] on all counts of Humphreys' complaint. We affirm.

## I. BACKGROUND

The district court presented the facts thoroughly and accurately in its opinion, *Humphreys v. Bellaire Corp.*, 764 F.Supp. 489 (S.D.Ohio 1991), and we will only capsulize them here. Humphreys had worked for Quarto Mining Company, a subsidiary of North American, for almost ten years when he was discharged in early April, 1987.[2] He had worked at a number of management positions prior to 1983, the year Robert Murray became executive vice president of North American. When Murray arrived, he promoted Humphreys to mine manager of the Quarto mine.[3] Humphreys claims that from some time in 1984 to March 1987, Murray made promises and assurances to him of continued employment with North American. Some of these representations were made only to Humphreys, while others were made to Humphreys and other employees in groups of two, four, or as many as twelve to fifteen. The most specific of these representations were that Humphreys (and sometimes others) would have a job with North American with no cut in pay regardless of what happened to the Quarto mine. The sale of the Quarto mine took effect in early April 1987, and when North American discharged Humphreys, he took a job at a lower salary with the purchaser of the mine. Humphreys then brought this lawsuit.

Humphreys asserted three claims in his complaint: (1) that he was terminated in violation of an oral contract; (2) that he detrimentally relied upon the promises of North American's president and chief operating officer, Robert Murray; and (3) that his termination was in violation of ERISA, 29 U.S.C. § 1140. After discovery, the district court granted summary judgment for North American on each of these claims. *Humphreys v. Bellaire Corp.*, 764 F.Supp. 489 (S.D.Ohio 1991). The court held that Humphreys' contract claim must fail because (1) there was no specific term of employment, (2) Humphreys failed to adduce proof that both parties intended to alter the employment relationship, which the district court presumed to be at will, and (3) Humphreys provided no additional consideration for the alleged promise of job security. The court granted summary judgment for North American on the estoppel claim because Humphreys did not show an issue of fact on the elements of (1) actual detrimental reliance, and (2) reasonable reliance. Finally, the district court held that because Humphreys was an at-will employee, who could be discharged at any time, "plaintiff's ERISA claims need not be addressed." 764 F.Supp. at 494.

## II. DISCUSSION

### A. Contract Claim

■ On appeal, Humphreys contends that the contractual promise which he seeks to enforce is one of employment with North American regardless of whether the Quarto contract was cancelled. Taken as a

---

* The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. During the time of the relevant events in this case, defendant-appellee Bellaire Corporation was known as North American Coal Corporation. Therefore, in this Opinion when the defendant-appellee is referred to by name it will be "North American."

2. Humphreys apparently worked directly for North American from early March to early April, 1987, but this is not material to the case.

3. Shortly after Murray arrived, he became president and chief operating officer of North American.

whole, however, Humphreys' deposition testimony clearly indicates that his understanding of Murray's representations was that the "contract" he had with North American was for permanent employment until he decided to retire or otherwise leave. As North American points out, this is the only reasonable interpretation of Humphreys' contract claim. If the alleged contract really was for employment regardless of whether North American operated the mine, Humphreys' employment status after the mine was actually closed or sold would once again be employment at will.

■ The general rule in Ohio is that unless otherwise agreed to by the parties, an employment agreement purporting to be permanent or for life, or for no fixed time period is considered to be employment terminable at the will of either party. *Henkel v. Education Research Council*, 45 Ohio St.2d 249, 344 N.E.2d 118 (1976). However, Ohio recognizes exceptions to this rule, particularly that

> the facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge.

*Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150, 154 (1985). Since Humphreys' alleged contract admittedly was for no specific period of time, his employment was presumptively at will. In order for Humphreys' employment to be considered other than at will, at a minimum Humphreys must have furnished North American some consideration for its promise of continued employment. The rule in Ohio is as follows:

> Generally speaking, a contract for permanent employment, for life employment, or for other terms purporting permanent employment, *where the employee furnishes no consideration additional to the services incident to the employment,* amounts to an indefinite gen-

eral hiring terminable at the will of either party, and a discharge without cause does not constitute a breach of such contract justifying recovery of damages.

*Henkel,* 45 Ohio St.2d at 255, 344 N.E.2d at 121–22 (emphasis supplied). The Supreme Court of Ohio reiterated this rule in *Mers,* and Ohio courts of appeals have followed it consistently. *E.g., Shaffer v. Frontrunner, Inc.,* 57 Ohio App.3d 18, 566 N.E.2d 193 (1990); *Boggs v. Avon Products, Inc.,* 56 Ohio App.3d 67, 564 N.E.2d 1128 (1990); *Boundy v. Arnold Haviland Co.,* 33 Ohio App.3d 156, 514 N.E.2d 931 (1986).

At oral argument, counsel for Humphreys conceded that the only consideration supplied by Humphreys was his forbearing from looking for other employment, but contended that this inactivity supplied all the consideration necessary to support the alleged contract. In support of this proposition, counsel cited *Helle v. Landmark, Inc.,* 15 Ohio App.3d 1, 472 N.E.2d 765 (1984). In *Helle,* however, the employer had made new promises of severance benefits to its employees, and the court addressed the effect of those promises on an existing employment contract for a definite term, not the length of employment contracts. Indeed, the court made it clear that the employee-plaintiffs were not employed at will because they had been told the plant was to close within one year. 472 N.E.2d at 772. *Helle* is therefore inapplicable here. *See also Bolling v. Clevepak Corp.,* 20 Ohio App.3d 113, 484 N.E.2d 1367, 1372–74 (1984).

In addition, the *Helle* court explicitly distinguished *Henkel* because that case involved the right to terminate an employee, and did not involve a benefit that had been promised to the employees orally and in a personnel handbook. *Id.* This Court, applying Ohio law, has also distinguished between cases involving the ability to terminate and those involving other promised benefits. *Bernard v. Rockwell Int'l Corp.,* 869 F.2d 928, 932 (6th Cir.1989). Since the present case involves the right to terminate an employment relationship, we

hold that cases such as *Helle* and *Bolling* have no application here.

*Henkel* and *Mers* make it clear that merely continuing to work cannot constitute additional consideration sufficient to modify an at-will employment relationship. We see no difference between an employee's continuing his normal work and his forebearing from seeking other employment, and we attach no legal significance to such forebearance. We recognize that Ohio law *might* consider an employee's forebearing from *accepting an offer of other employment* sufficient to constitute additional consideration to support an employer's promise of permanent employment. In the present case, however, Humphreys had not received an offer of other employment which he could have turned down in exchange for the claimed promise of permanent employment.[4] Under these circumstances, Humphreys' continuing to work for North American cannot constitute the additional consideration necessary to support a promise of permanent employment.

Under the foregoing principles of Ohio law, we conclude that summary judgment for North American on Humphreys' contract claim was appropriate. Humphreys' alleged contract did not contain a term during which he was to remain employed. Rather, it was a contract for life, which under Ohio law constitutes a contract for employment at will. *Henkel v. Education Research Council*, 45 Ohio St.2d 249, 344 N.E.2d 118 (1976); *Pyle v. Ledex, Inc.*, 49 Ohio App.3d 139, 142, 551 N.E.2d 205, 208 (1988). In addition, Humphreys provided no additional consideration to North American to support the alleged promise of continued employment. In the absence of a contract between Humphreys and North American for something more than employ-

ment terminable at will, Humphreys cannot maintain an action for breach of contract.

**B.  Promissory Estoppel Claim**

An employer is limited in its ability to discharge an employee when representations have been made to such employee that fall within the doctrine of promissory estoppel. *Mers*, 483 N.E.2d at 154. To prove a claim for promissory estoppel in the employment context, a plaintiff must show (1) that the employer made a promise, (2) which it reasonably should have expected to induce action or forebearance by the employee, (3) that there was such action or forebearance, and (4) injustice can only be avoided by enforcement of the promise. *Id.* at 154. In granting summary judgment on the estoppel claim, the district court held both that Humphreys had not relied on any representations of continued employment made by North American, and that as a matter of Ohio law, there could be no reasonable reliance on any such representations. We address the court's factual finding first.

The district court, after review of the record before it on summary judgment, concluded that "[b]y plaintiff's own admission he had not turned down a job offer in reliance on the statements made by representatives of the defendant," and that "plaintiff has failed to present any evidence to suggest that his investment decisions were based in any way on the alleged representations, nor that his alleged reliance was detrimental in any way." 764 F.Supp. at 494. We find that the record supports these conclusions, and on that basis, the district court's judgment for North American on the estoppel claim must be affirmed.

4.  *Boundy v. Arnold Haviland Co.,* is also instructive on the question of additional consideration. In that case, the court held that there was a valid and binding written employment contract between the plaintiff and his employer under the terms of which plaintiff was assured of a job until he was 65 years old or until certain other conditions were met. The court noted that the contract did not provide for "lifetime" or "permanent" employment, but established the term of plaintiff's employment until a specific time, when plaintiff reached age 65. 514 N.E.2d at 933. The consideration supplied by plaintiff was his promise to continue working for his employer, using his best efforts, for that specific period of time. *Id.* In the present case, Humphreys did not have a contract for a specific time period, and he made no promises to North American.

■ Having found that Humphreys failed to carry his burden of producing evidence of detrimental reliance sufficient to raise a genuine issue as to that fact, it is not necessary to our decision to reach the issue of whether, as a matter of law in Ohio, reliance on a promise of permanent employment is sufficient to meet the requirements of an estoppel action. However, because the district court held that it is not, and because we believe that the district court's analysis does not correctly state the law as it currently stands in the state of Ohio, we will address this issue as well.

The district court cited and relied upon *Hawley v. Dresser Industries, Inc.*, 737 F.Supp. 445 (S.D.Ohio 1990), and *Fallis v. Pendleton Woolen Mills, Inc.*, 866 F.2d 209, 213 (6th Cir.1989), in holding that reliance upon a promise of permanent employment is legally insufficient to meet the requirements of an estoppel action. In *Fallis* the Sixth Circuit held that because a promise of permanent employment means employment at will, "reliance on a purported promise of permanent employment must be construed as unreasonable and therefore insufficient to meet the requirements of a cause of action in promissory estoppel." 866 F.2d at 213 (citing *Frankart v. Jeep Corp.*, No. L–85–062, 1985 WL 8222 (Ohio.App. Nov. 8, 1985)) (internal quotations omitted); *accord Meredith v. Rockwell Int'l Corp.*, 826 F.2d 463, 469 (6th Cir.1987). In *Hawley*, the district court relied on *Fallis*, *Meredith*, and *Frankart*, but failed to discuss *Helmick v. Cincinnati Word Processing*, 45 Ohio St.3d 131, 543 N.E.2d 1212 (1989), a case decided by the Ohio Supreme Court after each of the two Sixth Circuit cases, but prior to the decision in *Hawley*. In the present case, the district court's reliance on federal cases interpreting Ohio law is only correct if those cases accurately reflect the law of Ohio. *See*

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Unlike the Sixth Circuit, the Supreme Court of Ohio has not held that reliance upon a promise of permanent employment is legally insufficient to meet the requirements of an estoppel action. Although that concept seems to fit logically into Ohio case law, the court's decision in *Helmick v. Cincinnati Word Processing*, 45 Ohio St.3d 131, 543 N.E.2d 1212 (1989), leaves open the possibility that under some circumstances reliance on a lifetime promise could be considered reasonable. Since that case was decided after *Fallis* and *Meredith*, it merits discussion.

The court in *Helmick*, emphasizing the specific nature of the promises made to the plaintiff and the extent of her detrimental reliance on those promises, reversed a grant of summary judgment for the employer on a claim of promissory estoppel. 45 Ohio St.3d at 136, 543 N.E.2d at 1217. The court stated, "A demonstration of detrimental reliance on specific promises of job security can create an exception to the employment-at-will doctrine." *Id.* at 136, 543 N.E.2d at 1217 (citing *Mers*, syllabus para. 3). Although the court did not specifically state that the promises made to the plaintiff were for permanent employment, it is clear from the court's opinion that the promises were for as long as her performance was good. *Id.* at 136–37, 543 N.E.2d at 1217. In light of that holding, we conclude that reliance on a promise of permanent employment might be considered reasonable. To the extent that *Meredith*, *Fallis*, and *Hawley* hold that reliance on such a promise is *per se* unreasonable, they are no longer the law in Ohio. However, while *Helmick* thus provides some support for Humphreys, it cannot save his estoppel claim, since, as we have noted above, he failed to show any detrimental reliance.[5]

---

5. Humphreys' contention that recent Ohio case law supports his theory that nebulous promises of "job security" are enforceable is not persuasive. Language in the body of the court's opinion in *Kelly v. Georgia–Pacific Corp.*, 46 Ohio St.3d 134, 545 N.E.2d 1244 (1989), the first case cited by Humphreys, is not controlling authority since only two judges joined in the

opinion of the court, while two others joined only in the syllabus and judgment.

In the second case that Humphreys cites, *Wing v. Anchor Media, Ltd.*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991), the court held as follows.

Wing was never promised job security. Although Wing may have thought that the prom-

## C. ERISA Discharge Claim

As noted above, the district court dismissed Humphreys' ERISA claim because Humphreys was an at-will employee. 764 F.Supp. at 494. We affirm the district court's dismissal of that claim, but for reasons other than those stated by the district court.

Title 29, section 1140 of the U.S.Code provides, "It shall be unlawful for any person to discharge ... a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, ..." It also states that the provisions of 29 U.S.C. § 1132 are applicable in the enforcement of rights granted under this section. In general, section 1132 authorizes the prosecution of civil suits to enforce substantive rights granted by the statute.

■ When applying this statute, most courts have held that it is appropriate to employ a *Burdine,* burden-shifting approach if there is no direct evidence of the employer's motivation. *Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 239 (4th Cir.1991); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1112 (2d Cir. 1988); *Gavalik v. Continental Can Co.,* 812 F.2d 834, 852 (3d Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987); *see generally Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). We shall follow that same approach. Thus, to avoid summary judgment on a section 1140 claim, a plaintiff must show the existence of a genuine issue of material fact that there was: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Gavalik,* 812 F.2d at 852.

■ This Court has noted that in order to show that he was discharged in violation of Section 1140, a plaintiff "must show that an employer had a specific intent to violate ERISA." *Rush v. United Technologies, Otis Elevator Div.,* 930 F.2d 453, 457 (6th Cir.1991). The plaintiff is not required to show that the employer's sole purpose in discharging him was to interfere with his pension benefits, but rather that it was "a motivating factor" in the decision. *Meredith v. Navistar Int'l Transp. Corp.,* 935 F.2d 124, 127 (7th Cir.1991); *Conkwright,* 933 F.2d at 238; *Dister,* 859 F.2d at 1111; *Titsch v. Reliance Group, Inc.,* 548 F.Supp. 983 (S.D.N.Y.1982), *aff'd,* 742 F.2d 1441 (2d Cir.1983).

■ If the plaintiff proves a *prima facie* case as set forth above, it is the employer's burden to "introduce admissible evidence of a legitimate, nondiscriminatory reason for its challenged action." *Gavalik,* 812 F.2d at 853; *see Dister,* 859 F.2d at 1112 (same, but noting that employer "need not persuade the court that it was actually motivated by the proffered reasons"). If the employer fails to do so, judgment should then be rendered for the plaintiff. *Gavalik,* 812 F.2d at 853. If the employer successfully asserts a legitimate reason for its actions, then the presumption of wrongful action drops from the case, and the plaintiff must either prove that the interference with pension benefits was a motivating factor in the employer's actions or prove that the employer's proffered reason is unworthy of credence. *Id.* at 853; *Dister,* 859 F.2d at 1112.

■ Applying this analysis to the present case, it is clear that summary judgment for North American was appropriate. Humphreys met his burden of presenting evidence to support each of the elements of a *prima facie* case. He was discharged, and it was his testimony that his pension

ise of a future opportunity to buy into the station meant job security, such a promise is not a promise of continued employment and, therefore, cannot reasonably be relied upon as such.... Accordingly, we hold that a promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory es-

toppel exception to the well-established doctrine of employment at will.
59 Ohio St.3d at 110–11, 570 N.E.2d at 1098–99. Humphreys construes this language to mean that "a promise of job security can make out a promissory estoppel exception to the doctrine of employment-at-will." (Brief of Appellant, at 27). That is not what the court held.

would have vested in two months and that this would have cost the company a substantial amount. Although it is no more than the bare minimum that a plaintiff must show to meet the *prima facie* case threshold, in this case it satisfies that low threshold because, examining only Humphreys' evidence, the proximity to vesting provides at least some inference of intentional, prohibited activity. *See Biggins v. Hazen Paper Co.*, 953 F.2d 1405, 1416 (1st Cir.1992), *petition for cert. filed*, 60 U.S.L.W. 3719 (Apr. 3, 1992) (No. 91–1600).

▮ North American has presented a legitimate reason for discharging Humphreys, specifically that the mine which he had managed was sold and that, by the people who were to be retained in the other mine, Humphreys was perceived as being out for himself rather than being a company man. Humphreys has presented no evidence to show that these reasons were pretextual. We are not persuaded that Murray's statement, made at the time of Humphreys' discharge, that "he could not afford me any longer" is evidence of North American's intention to interfere with his pension rights. First, there is no evidence from which to infer that Murray used "afford" in reference to financial matters. In light of the perceived problems of Humphreys' disloyalty to the company, such an inference is at least unlikely. Second, even if the statement did refer to financial matters, it cannot be the basis for an ERISA/discharge claim. The Fourth Circuit addressed a similar argument as follows.

[Plaintiff] Conkwright tries to save his claim by citing statements that Westinghouse sought to meet its "financial need" by terminating him, and that financial need necessarily includes pension costs. Conkwright's suggestion that Westinghouse acted illegally because it acted to save money proves too much. Under that reasoning, any actions by an employer that result in savings would be suspect. It is obvious that benefit costs make up a large amount of the costs of an employee to a company, and that pension rights are a substantial component of benefit costs, but these undeniable propositions are not sufficient standing alone to prove the requisite intent by the path of pretext.

*Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 239 (4th Cir.1991). Also, in *Nixon v. Celotex Corp.*, 693 F.Supp. 547 (W.D.Mich.1988), the court held that for a plaintiff to prevail on a section 1140 claim, he must prove more than monetary savings for his employer.

The "something more" which must be shown is a causal link between pension benefits and the adverse employment decision. In order to survive defendants' motion for summary judgment, plaintiff must come forward with evidence from which a reasonable jury could find that defendants' desire to avoid pension liability was a determining factor in plaintiff's discharge.

693 F.Supp. at 555. We find the reasoning of these cases to be both persuasive and fully applicable to the present case.

▮ The only other proof of pretext that Humphreys offered was the proximity between discharge and vesting. While we acknowledged above that proximity to vesting may provide enough to support the existence of a *prima facie* case, once the employer has presented a separate, legitimate reason for the discharge, we do not believe that savings and proximity will always be enough to entitle plaintiff to a trial on this type of claim. At least one court has held that the type of evidence presented here does not preclude summary judgment. In *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1117 n. 1 (2d Cir.1988), the court stated that its previous decisions "cannot be read to mean that mere cost savings and proximity to benefits are sufficient *per se* to create a genuine issue of material fact." *See also Serb v. Gagnier Prods. Co. Defined Benefit Pension Plan*, 658 F.Supp. 6, 8 (E.D.Mich.1986); *but cf. Biggins v. Hazen Paper Co.*, 953 F.2d 1405, 1416 (1st Cir.1992) (permitting the jury to draw inferences from the proximity of the date of firing and the date of vesting of plaintiff's pension). Here, any possible inference of pretext that might be drawn from the proximity to vesting is eliminated

because Humphreys was discharged on or about the date of the sale of the mine. Under these circumstances, we conclude that Humphreys' meager evidence is not sufficient to create a genuine issue of material fact.

Therefore, although the district court's reasoning was incorrect, summary judgment was nevertheless appropriate on Humphreys' ERISA claim. For the reasons set forth above, we affirm the district court's judgment for North American on Humphreys' ERISA claim. *See, e.g., Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir.1985) (district court's decision must be affirmed if correct for any reason, including a reason not considered by the district court).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's granting of summary judgment to North American on each of Humphreys' claims.