97 F.3d 1451
 Pens. Plan Guide P 23927R
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard L. AMATO, Plaintiff-Appellant,
v.
EQUICOR SEVERANCE PAY PLAN, et al., Defendants-Appellees.
 No. 95-3824.
 United States Court of Appeals, Sixth Circuit.
 Sept. 20, 1996.
 
 Before: KEITH, BOGGS, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Richard L. Amato appeals the district court's grant of summary judgment in favor of defendants EQUICOR Severance Pay Plan, EQUICOR, Inc., CIGNA Employee Benefits Companies, and Donald Benson, in his official capacity as CIGNA Regional Vice-President for Human Resources, in this action for breach of retirement and severance pay provisions under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.. On appeal, the issues are: (1) whether the district court erred in holding that defendants were not acting in their capacity as fiduciaries when they refused to provide plaintiff with a formal notice of the elimination of his job with EQUICOR until after the expiration of the severance pay plan; (2) whether the district court erred in its alternative holding that plaintiff would not have been entitled to benefits under the plan because he was offered employment by CIGNA; (3) whether the district court erred in holding that defendants did not intentionally deny benefits to plaintiff in violation of § 510 of ERISA; and (4) whether the district court erred in holding that plaintiff's state law claims were preempted by ERISA. Finding no error in any of these holdings, we affirm the district court's decision in all respects.
 
 
 2
 * Plaintiff Richard L. Amato was employed by defendant EQUICOR, Inc. ("EQUICOR") and its predecessor for nearly 30 years. He worked for EQUICOR as a senior marketing executive. On March 29, 1990, CIGNA Corporation ("CIGNA") purchased the stock of EQUICOR-Equitable HCA Corporation, and EQUICOR became a wholly owned subsidiary of CIGNA. Plaintiff remained in the job of Senior Marketing Executive at the same salary and grade level at which he had worked before the acquisition. As part of the restructuring, the Cleveland office of EQUICOR, where plaintiff worked, was consolidated into CIGNA's Cleveland office. In May 1990, EQUICOR instituted the EQUICOR Severance Pay Plan ("the Plan"), which superseded EQUICOR's previous Job Elimination Plan, in order to encourage EQUICOR employees to stay on during the transition. The Plan governed severance pay for EQUICOR employees whose jobs were eliminated and the Plan ceased under its own terms on December 31, 1990.
 
 The Plan provided, in relevant part:
 JOB ELIMINATION
 Who Is Eligible
 
 3
 You are eligible for severance pay under Schedules I or II if--
 
 
 4
 You are eligible to participate in the Plan (see page 1);
 
 
 5
 If you are a part-time employee, you have completed at least three years of service on your Notification Date;
 
 
 6
 Your job has been eliminated as a result of a reorganization, consolidation, department or office closing, or in conjunction with a work force reduction and you receive Notice of job elimination;
 
 
 7
 You are in a position below the Management Policy Committee when you receive Notice of job elimination; and
 
 
 8
 None of the exceptions listed below applies.
 
 
 9
 You will not be eligible for any severance pay under either Schedule I or II if--
 
 
 10
 You are a member of the Management Policy Committee or you are a party to a contract which governs severance pay or other benefits upon your termination of employment;
 
 
 11
 You accept an offer of a Suitable Position or any other position with a CIGNA company;
 
 
 12
 You resign or retire and your resignation or retirement is effective before the Notification Period begins;
 
 
 13
 You resign or retire and your resignation or retirement is effective any time after you are offered a Suitable Position which does not have a salary range midpoint lower than the salary range midpoint of the position you held on your Notification Date;
 
 
 14
 Your employment terminates for any reason other than job elimination as described above;
 
 
 15
 Your employment relationship with EQUICOR terminates when your employing company or its assets is/are sold to a person, company or other entity and you are employed by the successor person, company or entity;
 
 
 16
 Your employment with EQUICOR terminates solely because you become employed by CIGNA Corporation or one of its subsidiaries which does not participate in the Plan; or
 
 
 17
 You decline an interview for a Suitable Position; or
 
 
 18
 You refuse an offer for a Suitable Position.
 
 
 19
 The Plan defines "Notice" as "formal, advance, written notification of job elimination." It defines "Suitable Position" as:
 
 
 20
 a position in which there is an open job and which--
 
 
 21
 In the opinion of management, is a reasonable match with your qualifications, skills and experience; and
 
 
 22
 Has a salary range midpoint which is equal to or higher than the salary range midpoint of your position on your Notification Date; and
 
 
 23
 Is located within a 35-mile radius of your permanent residence on the Notification Date; and
 
 
 24
 Is in a participating entity listed on Appendix A.
 
 
 25
 Plaintiff Amato contends that in the fall of 1990, he learned that his position as senior marketing executive was being eliminated and that he would be offered a new position at CIGNA with a lower base salary and less desirable terms. In his affidavit, he stated that he believed, based on the assurances of his manager, that he would receive severance benefits if he stayed with EQUICOR during the transition period. In a letter to Ray Colleran, EQUICOR's Regional Marketing Director, plaintiff wrote that he had been "trying to evaluate and compare compensation and benefit programs of EQUICOR and CIGNA" and that although he had received no formal notification of the new compensation program, he had some concerns. He concluded by writing: "I feel that the duties I will assume with the CIGNA are not comparable in pay or benefits, and on that basis feel that outplacement under the EQUICOR severance pay plan is appropriate." He contends that this letter constituted a request for a formal notice of job elimination, but there is no dispute that he never received such a notice from EQUICOR. Plaintiff contends that defendants intentionally withheld this notice in order to deny him the large benefits he was due under the Plan. Plaintiff Amato retired from his employment with EQUICOR on December 31, 1990, and he contends that this retirement without severance pay was necessary to allow him to take advantage of EQUICOR's other retirement benefits.
 
 
 26
 On January 23, 1991, plaintiff made a formal written demand for severance benefits, which would have amounted to approximately $157,819, to the EQUICOR Employee Relations Department. This demand was denied, and plaintiff appealed to Donald Benson, Vice President of Human Resources. This appeal was also denied.
 
 
 27
 On July 22, 1992, plaintiff filed a complaint under ERISA against EQUICOR, as his former employer and as plan administrator; CIGNA; and Donald Benson. Count I alleged that EQUICOR and its Plan administrator arbitrarily and capriciously refused to issue plaintiff a notice of job elimination and to grant him his severance pay. Count II alleged that EQUICOR and its Plan administrator breached their fiduciary duties by utilizing delay tactics against plaintiff, refusing to issue plaintiff written notice of job abolishment, and failing to award him his severance payment. Count III claimed that EQUICOR and its Plan administrator breached plaintiff's employment contract by refusing to issue a notice of job elimination. Count IV claimed that CIGNA and Donald Benson breached their fiduciary duties to plaintiff by refusing to issue plaintiff a notice of job elimination and to grant plaintiff his severance pay. Count V alleged that CIGNA and Benson breached their fiduciary duties to plaintiff by utilizing delay tactics, by refusing to issue or ensure the issuance of plaintiff's notice of job elimination, and by failing to award plaintiff his severance pay. Count VI claimed promissory estoppel based on plaintiff's reliance on his contract of employment and the assurance of his Regional Sales Manager.
 
 
 28
 On December 21, 1992, plaintiff filed a motion for partial summary judgment, and defendants filed a cross-motion for summary judgment on January 7, 1993. The case was referred to a magistrate judge, and on March 30, 1995, the magistrate judge issued a report and recommendation, recommending that defendants' motion for summary judgment be granted. On April 17, 1995, plaintiff filed objections to the magistrate judge's report and recommendation, and on June 30, 1990, the district court adopted the report and recommendation and granted summary judgment to defendants. This timely appeal followed.
 
 II
 
 29
 Plaintiff appeals the district court's grant of summary judgment in favor of defendants. We review a district court's grant of summary judgment de novo. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 603 (6th Cir.1988).
 
 III
 
 30
 First, plaintiff argues that the district court erred in holding that defendants were not acting as fiduciaries when they failed to provide plaintiff with a notice of job elimination and that this action was not a breach of defendants' fiduciary duties under 29 U.S.C. § 1104. Under the terms of the Plan, EQUICOR served as Plan administrator and reserved discretion to interpret its job elimination policy. By choosing to act as both Plan administrator and employer, EQUICOR owed a fiduciary duty to its employees to the extent that it functioned as Plan administrator. Amato v. Western Union International, Inc., 773 F.2d 1402, 1416-17 (2d Cir.1985), cert. dismissed, 474 U.S. 1113 (1986). ERISA defines "fiduciary" as follows:
 
 
 31
 [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
 
 
 32
 29 U.S.C. § 1002(21)(A).
 
 
 33
 The district court found that "Amato retained his ... position in senior management until he retired on December 31, 1990, he was not entitled to a notice of job elimination[,] and no breach of fiduciary duty in the Plan administration followed." Plaintiff relies on Blatt v. Marshall & Lassman, 812 F.2d 810 (2d Cir.1987), to argue that defendant EQUICOR breached its fiduciary duty by failing to issue a notice of job elimination in order to allow him to receive severance benefits under the Plan. In Blatt, the plaintiff participated in the American Institute of Certified Public Accountants Pension Plan, which required an employer to furnish the plan administrator with a "notice of change" when someone left the firm. The plaintiff did leave the employment of the defendant and requested a lump sum pension distribution from the pension plan. The defendant refused to send a "notice of change" despite the plaintiff's requests, and the court held that the defendant had breached its fiduciary duty. It reasoned that when the defendant ignored Blatt's requests and delayed sending in the notice of change form, "[it] effectively prevented the Retirement Committee [of the pension plan] from returning Blatt's vested contributions to him." Id. at 813. Therefore, it held that the defendant exercised control respecting the disposition of plan assets and was a fiduciary to the extent of this control. It further held that the defendant breached this duty by preventing the plaintiff from receiving benefits to which he was entitled. Ibid.
 
 
 34
 In this case, plaintiff asserts that his job clearly was being eliminated because defendants had told him that his pay would be cut, his secretary removed, and his accounts taken away, when he moved to CIGNA in 1991. He therefore argues that he should have received a formal notice of job elimination in 1990, and that defendants' refusal to issue this notice was a breach of fiduciary duty. However, as the district court correctly pointed out, the decision regarding the elimination of plaintiff's job was a management prerogative, and plaintiff did not demonstrate that his job was eliminated prior to December 31, 1990, the date on which the Plan terminated. The changes in job duties and form of compensation that plaintiff described in his affidavit did not necessarily amount to a job elimination, and even if they did, they would not have taken place until after the termination of the Plan. Therefore, unlike the employer in Blatt, defendant EQUICOR was not merely refusing to provide notice of an action that had already occurred. In order for this case to be analogous to Blatt, plaintiff would have had to establish that the decision to eliminate plaintiff's position had been made by EQUICOR and that defendants were merely refusing to provide the written notice that would have allowed plaintiff to receive his severance benefits. The district court was correct in holding that plaintiff was not entitled to a notice of job elimination and that no breach of fiduciary duty occurred.[1]
 
 IV
 
 35
 Second, plaintiff argues that the district court erred in holding that the purpose of the Plan was to provide severance benefits only to employees who had no offer of any employment from CIGNA. Plaintiff asserts that the purpose of the Plan was to provide severance benefits to employees of EQUICOR who were not offered a "suitable position" at CIGNA. According to plaintiff, he was not offered a suitable position and therefore should have received severance benefits. However, two of the exceptions to coverage under the Plan describe (1) an employee whose employment with EQUICOR terminates solely because he becomes employed by "CIGNA or one of its subsidiaries which does not participate in the Plan" and (2) an employee whose relationship with EQUICOR terminates when his employing company or its assets are sold and the employee is employed by the successor. These provisions make no mention of a suitable position and thus support the district court's conclusion that the purpose of the Plan was to protect against involuntary unemployment. Although certain aspects of plaintiff's position were changing, his employment would have continued with CIGNA had he not resigned prior to the Plan's expiration. The district court did not err in holding that the non-payment of benefits to plaintiff was not against the terms of the Plan.
 
 V
 
 36
 Third, plaintiff argues that the district court erred in holding that defendants did not intentionally deny him benefits in violation of § 510 of ERISA, 29 U.S.C. § 1140. Plaintiff argues that defendants "flagrantly" interfered with his right to severance benefits by refusing to provide him with a notice of job elimination despite having offered him a job that was less than suitable and despite his request for notice.
 
 Section 510 provides:
 
 37
 It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for ... the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.
 
 
 38
 Plaintiff argues that defendants manipulated the issuance of his notice of job elimination and discriminated against him to avoid a cash outlay of nearly $160,000 which he "earned under the Plan for his long years of service." Appellant's Brief at 21. The district court noted that the purpose of § 510 was to stop employers from discharging or harassing employees to prevent them from obtaining their vested pension rights. It held that based on its finding that defendants had no duty to provide plaintiff with notice during the pendency of the Plan, plaintiff's right to severance pay never vested, and defendants could not have violated § 510. The district court further held that defendants' actions were not discriminatory because they were consistent with the Plan's purpose of awarding severance pay to employees who were left unemployed.
 
 
 39
 In Humphreys v. Bellaire Corp., 966 F.2d 1037 (6th Cir.1992), this court stated that in order to make out a prima facie case under § 510, the employee must show that there was "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." Id. at 1043. Although the magistrate judge in this case speculated that defendants may have delayed the elimination of plaintiff's job in order to avoid a large severance payment, defendants had no responsibility to eliminate plaintiff's job in order to allow him to receive benefits under the Plan. The vesting of plaintiff's right to severance pay was wholly dependent on the employer's decision regarding termination, and plaintiff has not demonstrated the prohibited employer conduct necessary to make out a § 510 violation.
 
 VI
 
 40
 Fourth, plaintiff argues that the district court erred in holding that his state law claims were preempted by ERISA. He argues that if defendants were acting as employers rather than fiduciaries under the Plan, then his state law claims for breach of contract and promissory estoppel would not be preempted by ERISA. He states that if an employer makes false promises to an employee, state claims are not preempted.
 
 
 41
 ERISA broadly preempts state law and state law claims that "relate to" any employee benefit plan. The phrase "relate to" is given broad meaning, and a "state law cause of action is preempted if 'it has connection with or reference to that plan.' " Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1275 (6th Cir.1991) (citation omitted). "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." Id. at 1276. In this case, plaintiff claims that defendants breached his contract by refusing to issue a notice of job elimination that would have allowed him to recover benefits and makes a promissory estoppel claim based on his reliance on his contract of employment and the assurance of his Regional Sales Manager. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987). Both of these claims clearly arise from the administration of the Plan and relate to the recovery of benefits. The only benefit the plaintiff claims is an amount that is calculated by the Plan, and to which he is only entitled, if at all, by the Plan. These state law claims are clearly preempted by ERISA.
 
 VII
 
 42
 For the foregoing reasons, the judgment of the district court is AFFIRMED in all respects.
 
 
 
 [1]
 Plaintiff filed a supplemental brief discussing the impact of the Supreme Court's decision in Varity Corp. v. Howe, 116 S.Ct. 1065 (1996), on his case. In Varity, the employer, Varity Corp., also served as the plan administrator. For financial reasons, it decided to transfer certain money-losing divisions to an entity named Massey Combines. It held a meeting to persuade the employees of the failing divisions to change employers and benefits plans, and at this meeting, it painted a false picture of the financial stability of Massey Combines in order to convince the employees that their benefits would remain secure if they switched plans. However, Massey Combines was actually insolvent and the employees that transferred lost their benefits. The Supreme Court held that Varity misled its employees about the company's financial stability in order to induce them to switch plans. It found that Varity was acting in its capacity as plan administrator when it provided information to plan beneficiaries in order to help them decide whether to remain with the plan and held that the fact that Varity made false statements to make the beneficiaries believe that their benefits would be secure was a breach of its fiduciary duty
 Plaintiff argues that, like the defendant in Varity, the defendants in this case made communications to him regarding his benefits under the Plan that resulted in his losing his benefits. He states that defendants assured him that if he worked through the transition, he would receive severance benefits and that defendants then refused to provide him with the notice of job elimination that would have made those benefits possible. However, as defendants correctly point out, plaintiff's reliance on Varity is misplaced. The defendant in Varity made false representations about its business reasons for creating Massey Combines and incorrectly portrayed its financial outlook. The issue in the case was whether Varity was acting as an ERISA fiduciary when making such representations. The issue in this case is quite different. In this case, plaintiff argues that defendants breached their fiduciary duties by failing to provide him with a notice of job elimination, thus preventing his severance benefits from vesting. However, as discussed above, defendants' decision not to eliminate plaintiff's job was not a fiduciary one. Even if defendants did assure plaintiff that he would receive severance benefits, such a misrepresentation as an employer is not comparable to the one at issue in Varity, which involved an employer who was also a plan administrator who misled employees as to the financial soundness of a plan. Here, the employer, at most, misled an employee concerning the way in which he would be removed from the company's employ. Plaintiff's complaint about that action, if it occurred, would be against the employer on a contract theory.