**Evelyn PETRUS, Plaintiff–Appellant,**

v.

**LUCENT TECHNOLOGIES, INC.,
Defendant–Appellee.**

No. 03–3460.

United States Court of Appeals,
Sixth Circuit.

June 28, 2004.

Michael T. Conway, Michael Terrence Conway Company, Brunswick, OH, for Plaintiff–Appellant.

Charles M. Roesch, Cincinnati, OH, for Defendant–Appellee.

Before: BOGGS, Chief Judge; BATCHELDER, and MOORE, Circuit Judges.

BATCHELDER, Circuit Judge.

Evelyn Petrus ("Petrus") appeals the district court's grant of summary judgment to defendant Lucent Technologies, Inc. ("Lucent") on her claim under the Employee Retirement Income Security Act of 1974 ("ERISA") § 510, 29 U.S.C. § 1140. Specifically, Petrus asserts that she presented sufficient evidence to demonstrate a genuine issue of material fact regarding her claim of pension rights interference. Because we find that Petrus presented no evidence that Lucent or its employees acted with the purpose of interfering with Petrus's pension rights, we affirm the district court's grant of summary judgment.

## I.

Petrus began working for Ohio Bell at age 17 in 1969. She worked for affiliated companies, including AT & T and Lucent, until 1999, a total of 29.6 years. In 1999 Petrus was working at Lucent, which manufactures telecommunications equipment. In 1999 Lucent's telecommunications sales organization included three divisions: Enterprise, Global, and the Small Business Division–Growing and Emerging Markets Division ("SBD–GEM").

Petrus asserts that during February or March of 1999, the newly appointed Vice President and General Manager for the SBD, Deborah Johnson ("Johnson") indicated to Petrus that she wanted Petrus to fill the position of Area Chief Financial Officer ("ACFO") for the SBD–GEM. Petrus claims she did not want the promotion because she knew Lucent wanted to sell the SBD–GEM; if she accepted the promotion and Lucent sold the division, she would not be able to retire from Lucent with full pension. According to Petrus, she was two years short of being 100% pension benefit eligible in Lucent's pension plan when Johnson first approached her. Petrus claims that she told Johnson about these concerns.

When Johnson again asked Petrus to take the ACFO position with the SBD–GEM, Petrus told Johnson she had already accepted a position with the Global Enterprises Division. According to Petrus. Johnson nevertheless "retained" Petrus for the SBD–GEM ACFO position. Petrus stated that "retention" meant she could not move from division to division, or she would be fired. According to Petrus, Johnson told Petrus she could transfer to the Global Division as ACFO in six months. Lucent, however, filled the ACFO position for the Global Division before the six months was over.

On April 1, 1999, Johnson promoted Petrus to ACFO of the SBD–GEM Division. The ACFO position was a higher level position than the market analyst position Petrus held previously. Petrus and Johnson both agree that Petrus was well qualified and particularly well suited to the ACFO position with the SBD.

After Johnson promoted Petrus, Lucent announced that it was negotiating a sale of the SBD–GEM division to Newcourt, a Washington, D.C. company. Newcourt represented to Lucent and to the employees of the SBD–GEM that all of their pay and benefits, including pension, would remain the same after the sale to Newcourt. The proposed sale fell through in late June 1999.

In late 1999, Petrus told Johnson she wished to remain a Lucent employee, and wanted to transfer to a division that was sure to remain with Lucent. According to Petrus, Johnson told Petrus there was no position for her at Lucent.

At the end of February, 2000, Petrus claims she learned in confidence that Lucent planned to sell the SBD–GEM division to Expanets, a subsidiary of North-Western Corporation. Lucent announced the sale of SBD–GEM to Expanets on March 31, 2000. The sale was effective April 1, 2000, and at that time all the employees of SBD–GEM, over two thousand persons, became employees of Expanets. As an employee of Expanets, Petrus was unable to retire from Lucent with full pension. Petrus alleges as a consequence of the promotion and sale, she received a discounted pension at a loss of $168,830.00. or 43.5% of her benefits.

## II.

Section 510 of ERISA was primarily designed to prevent "employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *West v. Butler*, 621 F.2d 240, 245 (6th Cir.1980) (citation omitted). Although there is no direct evidence of Lucent's intent to violate ERISA. Petrus may establish a prima facie case under ERISA § 510 by showing three elements: (1) Prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled. *Pennington v. Western Atlas*, 202 F.3d 902, 906 (6th Cir.2000)(quoting *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir.1997)).

To establish the "purpose of interfering" element, Petrus need not show that Lucent's sole purpose was to interfere with her entitlement to benefits. *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1411 (6th Cir.1996). She must show, however, that Lucent's desire to avoid pension liability "was a motivating factor" in the employer's decision. *Shahid*, 76 F.3d at 1411. *See also Smith v. Ameritech*, 129 F.3d at 865.

Petrus has not presented sufficient evidence that Lucent or its employees intended to affect her pension rights by promoting her. We have sometimes allowed a plaintiff to make out a prima facie case of ERISA discrimination by showing a close temporal proximity between the employer's action and an important milestone in the vesting of the employee's pension benefits. *E.g. Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043–44 (6th Cir.1992) (holding that plaintiff had made out a "bare minimum," circumstantial prima facie case by showing that his employer discharged him within two months of his pension vesting date). But here, nearly two years separated the date of Petrus's transfer to the SBD–GEM and the date her Lucent pension would have become fully vested. We have not allowed plaintiffs to make out a submissible case by pointing to temporal gaps of this size, except when there are additional, highly probative facts that suggest intentional discrimination. *See Pennington*, 202 F.3d at 905 (affirming jury verdict for plaintiffs who were discharged four to five years prior to full vesting, where employer had deliberately compiled a list of "HIGH RISK" employees, and compiled a list of employees' pension statuses, before initiating a reduction in force). Such facts are absent here. Nor is there any evidence that Lucent was motivated to sell the SBD–GEM division in order to affect Petrus's pension rights. The evidence instead indicates that Johnson's motivation was to make the SBD–GEM sale ready, not to deprive Petrus of her full pension. Petrus's loss of pension benefits was a mere

consequence of, not a motivating factor behind, Johnson's decision to place Petrus in the position of ACFO of the SBD–GEM Division. Additionally, Petrus has not established that this motivation was a mere pretext. Consequently, Petrus cannot establish her prima facie case. The district court was therefore correct to grant summary judgment to Lucent.

MOORE, Circuit Judge, concurring.

I concur in the judgment because I believe that, reading the facts in the light most favorable to Petrus, while she may be able to make out a prima facie case, she cannot show that Lucent's proffered legitimate reason for her promotion was pretextual. In the absence of direct evidence of intent to violate § 1140, a "plaintiff can state a prima facie case by showing the existence of (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Smith v. Ameritech,* 129 F.3d 857, 865 (6th Cir.1997) (quoting *Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1043 (6th Cir.1992)). Once that prima facie case is made, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Id.* If the defendant articulates such a reason, the burden shifts back to the plaintiff to prove the reason was pretextual. *Id.* Although a prima facie case may be made simply by showing an adverse action proximate in time to an increase in cost for an employer, whether due to retirement, benefits vesting, etc., such evidence will rarely be sufficient to show pretext. *See Humphreys,* 966 F.2d at 1044. Lucent's nondiscriminatory reason for promoting Petrus was that she was qualified for the position, which had opened up as a result of a reorganization. None of the evidence Petrus points to shows pretext, but instead the evidence reveals that she was placed in the position as a result of her unique qualifications for the ACFO position. Petrus cannot carry her burden of establishing that Lucent's reason for promoting her was pretextual.