**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0150n.06

No. 09-1470

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 10, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MARK ENSLEY; JAMES BARTH; DONALD BLUM; GARY CHINIGO; ROBERT MATSUI; JOSEPH PIEPRZAK, | ) ) ) ) | |
| Plaintiffs,* | ) ) | |
| and | ) ) | |
| GREGORY NYCHOLAS; TIM BLACKLOCK; ALAN JUDGE; THOMAS SAAD; KELVIN LEE VAN NORTWICK; CYNTHIA ALSMAN; PAMELA KIRKALDY; ROBERT CAPERTON; JOHN ROOF; DANNY BORTZ, | ) ) ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| FORD MOTOR COMPANY, | ) ) | |
| Defendant-Appellee, | ) ) | |
| and | ) | |
| VISTEON CORPORATION, | ) ) | |
| Defendant.* | ) | |

Before: NORRIS, COOK, and GRIFFIN, Circuit Judges.

---

*Plaintiffs Ensley, Barth, Blum, Chinigo, Matsui, and Pieprzak, and Defendant Visteon Corporation are not parties to this appeal.

COOK, Circuit Judge.  Plaintiffs accused their employer, Ford Motor Company (Ford), of interfering with their benefits acquisition by classifying them as "rehired" rather than "reinstated" employees when Ford reacquired two previously spun-off production facilities, thereby violating the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq*.  Because Plaintiffs fail to establish an expectation of future pension benefits, a necessary element of their claim, we affirm.

I.

Plaintiffs worked for Ford as salaried employees until 2000 when Ford transferred its interest in Visteon Corporation, an automotive parts manufacturer where Plaintiffs worked, to its stockholders and divested itself of Visteon's operations.  Ford and Visteon executed an Employee Transition Agreement (the Agreement) governing the transfer of Ford salaried employees to Visteon, in part to facilitate the "orderly transition of benefits plans."  The Agreement required that Ford retain liability for Plaintiffs' pension benefits insofar as they accrued prior to the transfer and that Visteon establish a "substantially comparable" retirement plan.  Also under the Agreement, Ford amended its Group Retirement Plan so that each plaintiff's combined years of Ford and Visteon service counted toward early retirement *eligibility*, but each plaintiff's monthly benefit *amount* remained distinct from that calculation, based instead, in part, on the employee's Visteon salary.

More than three years after the spin-off, Ford again amended the Group Retirement Plan to exclude any employee hired or rehired after January 1, 2004 from participation and created a new

defined contribution pension plan with less favorable terms for all new employees. Thus, when Ford evaluated options for reacquiring Visteon in 2005, it created three plausible models for employee transfer: (1) return Visteon salaried employees to Ford as new hires without regard to prior service and enroll them in the new defined contribution plan; (2) return Visteon salaried employees to Ford as new hires without regard to prior service, but using combined Ford/Visteon service to determine eligibility for, but not the amount of, retirement benefits; and (3) return Visteon salaried employees to Ford as reinstated Ford employees with full Group Retirement Plan participation—in effect, ignoring the recent GRP amendment. Ford chose the second of the three models, which meant that Plaintiffs, though still eligible for early retirement based on combined years of Ford/Visteon service, could receive only a portion of the monthly benefit amount to which never-transferred employees were entitled.

Plaintiffs sued, contending that Ford classified them as "rehired" rather than "reinstated" to interfere with their acquisition of benefits in violation of ERISA § 510 and seeking an order requiring Ford to provide them pension benefits based not only on the time they worked at Ford, but also on the time they worked at Visteon. Ford countered that a 1991 Ford Policy Directive (the Directive) divested all transferred employees of reinstatement rights such that Plaintiffs, once transferred to Visteon in 2000, lost any expectation of future pension benefits. According to Ford, without such expectation, Plaintiffs could not show that their classification by Ford as "rehired" (with the resulting loss of service credit for the Visteon years) amounted to an adverse action. The district court granted Ford summary judgment, and Plaintiffs timely appealed.

II.

Section 510 of ERISA makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit plan]." 29 U.S.C. § 1140. Though "generally free under ERISA . . . to adopt, modify or terminate" pension benefit plans, *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 508 (6th Cir. 2004) (internal quotation marks and citation omitted), § 510 prevents "employers from discharging or harassing" employees to preclude "them from obtaining vested pension rights," *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980), or to "circumvent the provision of promised benefits," *Inter-Modal Rail Employees Ass'n v. Atchinson, Topeka & Sante Fe Ry.*, 520 U.S. 510, 515 (1997) (internal quotation marks omitted).

Plaintiffs assert that Ford classified them as rehired, rather than reinstated, in order to prevent their full attainment of retirement benefits in violation of § 510. Because Plaintiffs put forth only circumstantial evidence of Ford's intent, to avoid summary judgment, they must demonstrate "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992) (internal quotation marks and citation omitted). Even with such evidence, though, Ford may "rebut the presumption of impermissible action . . . by introducing 'evidence of a legitimate, nondiscriminatory reason for its challenged action.'" *Smith v. Ameritech*, 129 F.3d 857,

865 (quoting *Humphreys*, 966 F.2d at 1044). To prevail, then, Plaintiffs must demonstrate that Ford's proffered reason constitutes mere pretext. *Ameritech*, 129 F.3d at 865. This court also requires Plaintiffs to show a "causal link" between Ford's adverse decision and their loss of benefits, specifically, "evidence from which a reasonable jury could find that the defendant['s] desire to avoid pension liability was a determining factor" in Ford's allegedly discriminatory action against Plaintiffs. *Humphreys*, 966 F.2d at 1044.

Because the Directive stripped the Plaintiffs of any legitimate expectation that Ford would credit their Visteon-service years when calculating Ford pension benefits, their § 510 claim fails. "[T]he *sine qua non* of a § 510 claim is the presence of some adverse action done to interfere with an employee's rights," *Crawford v. TRW Auto. U.S. LLC*, 560 F.3d 607, 612 (6th Cir. 2009), specifically, an employee's "'pension rights or the expectation of those rights,'" *Mattei v. Mattei*, 126 F.3d 794, 799 (6th Cir. 1997) (quoting S. Rep. No. 93-127, *reprinted at* 1974 U.S. Code Cong. & Admin. News 4838, 4872). In *Crawford*, we held that former employees could not prevail under § 510 when the employer refused to recall them to service because the "employees would have no more right to be hired than someone who had never worked for [the employer]." 560 F.3d at 612. In this case, the 1991 Policy Directive created just such a situation: consistent with the Directive, Plaintiffs rejoined Ford's ranks with no expectations or rights in their old Ford retirement plan, just like newly hired employees. Plaintiffs respond that they need not establish an employment relationship with Ford to show interference with their pension rights, repeatedly citing *Mattei* for the proposition that "Congress intended that [ERISA protection] sometimes reach beyond the

employment relationship." *Id*. at 800. But Plaintiffs miss the key point—§ 510 protects pension

rights and expectations of rights. Though some non-employees, like the widow plaintiff in *Mattei*,

may expect particular benefits based on another's employment relationship, when Ford transferred

Plaintiffs to Visteon in 2000, Plaintiffs forwent future rights in the Ford Group Retirement Plan—the

Directive explicitly divested Plaintiffs of reinstatement rights for employment or benefits plan

purposes. Thus, because Plaintiffs lacked an expectation of future pension benefits, Ford's decision

to classify them as rehired (and consequently ineligible for Group Retirement Plan benefits) cannot

constitute an adverse action taken to circumvent a right or expectation of benefits.

Plaintiffs argue that in reaching its summary judgment decision, the district court improperly

resolved a disputed issue of material fact. By crediting Ford's reliance on the Directive, Plaintiffs

urge, the court dismissed the "significant evidence demonstrating that Ford's reliance on the . . .

Directive was a pretext for unlawful interference under § 510." Appellant's Br. at 54. That is, the

use of the Directive to classify Plaintiffs as rehires (and thereby curb pension benefits), while at the

same time treating Plaintiffs as "reinstated" for other purposes, exposes the pretextual nature of Ford

rooting its classification choice in the Directive. *Id*. (citing *Village of Arlington Heights v. Metro.*

*Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977)). Yet this argument fails because Ford's voluntary

accommodations to Plaintiffs in excess of those required by the Directive does not undermine its

appropriate reliance on the Directive to classify Plaintiffs for Group Retirement Plan benefits

calculations. Accordingly, the district court resolved no genuine, material, factual issue in crediting

the Directive's mandate, and we, like the district court, may properly rely upon it to conclude that,

because Plaintiffs were not employees of Ford during their Visteon employment, classifying them

as Ford rehires cannot constitute an adverse action under § 510.

III.

For these reasons, we affirm.