■

**DESANTIS, Plaintiff, v. ZELL, Defendants.**

Common Pleas Court, Cuyahoga County.

No. 609853.   Decided March 28, 1951.

W. P. Newton, Frank Leonetti, Cleveland, for plaintiff.
Bloomfield, Fowerbaugh & Ray, and John F. Ray, Jr., Cleveland, for defendants.

## OPINION

By HOOVER, J:

This action for specific performance illustrates perfectly how conscientious laymen, by writing their own land contracts, can save for themselves unusually nice headaches, especially if they are courageous enough to tackle a description for the sale of a part of a gloriously irregular tract.

The scene of this heated battle is laid in Pepper Pike Village. There, fronting on Gates Mills Boulevard, the seller, who now finds herself a defendant, owned a certain sublot 8 which, through a bird's eye, might be described as looking like two boxes, a smaller one resting on top a larger one, and the smaller hanging precariously over the edge of the larger thus forming quite a lateral jog and giving the impression that with a little shove it would tumble off. For rough purposes we shall say that Gates Mills Boulevard runs in an East-West direction and forms the southern boundary of sublot 8; and that the northern boundary is Bernwood Road which is parallel to Gates Mills Boulevard. Though this sublot extends 375 feet along Gates Mills Boulevard, it fronts only 300 feet on Bernwood Road.

The profile from the air looks something like this:

The buyer's son conducted negotiations for the buyer. As

a result, the buyer is now a plaintiff. To simplify the story we relate it as if the buyer had dealt for himself.

Desiring to acquire part of sublot 8, buyer opened negotiations in seller's home. Buyer says it was agreed that he was to get one-half of sublot 8, with the slight exception that on Gates Mills Boulevard, (and in the bigger box) he was to get only 187 feet instead of 187½ feet which would have been the exact half there; and that the reason he took 187 feet instead of 187½ feet was to eliminate the awkward one-half foot. Under this interpretation, buyer would get half the small box and half the 300 feet frontage on Bernwood Road, ie, a Bernwood frontage of 150 feet.

Seller claims that she never agreed to sell half of sublot 8 even with the slight half foot variation; that what she agreed to sell was a certain part of sublot 8 fronting 187 feet on Gates Mills Boulevard; that the dividing line between the part she sold and the part she retained ran perpendicularly from Gates Mills Boulevard straight through to Bernwood and did not jog where sublot 8 jogs. Under this interpretation, buyer would not get half of the small box but only about 1/12 of it; and would not get 150 feet frontage on Bernwood but only about 25 feet.

Otherwise the parties are in perfect agreement. On two important things in particular do they agree:

1. That the part sold lies on the eastern side of sublot 8.

2. That the buyer was to get 187 feet along Gates Mills Boulevard, in fact, the 187 eastern-most feet there.

In picture form, the two contentions are as follows:

Stated most simply the question is—is the dividing line between what seller sold and what seller retained, just one straight line, or does it jog where sublot 8 jogs.

Unfortunately the parties didn't seem to know they differed about this boundary line until after the deed was filed for record. The deed conveyed seller's version. Buyer did not see the deed until after it was recorded. Buyer now seeks to compel a conveyance of his version.

There is sharp conflicting evidence supporting both contentions, but there is one bit of written evidence about which there is no dispute. Concluding their first negotiations, buyer gave seller a $100.00 deposit, and seller in her own handwriting gave buyer a receipt for

"one hundred dollars deposit on part sublot No. 8—187 feet to or through to Bernwood."

Since this is the only written shred· between the parties themselves describing the parcel to be sold and since it was made before dispute arose and could color either's contention, it is the most important factor in the case. If it throws any clear light on whether the boundary is straight or jogged, it must be given great weight. It does point a way.

Contracts for the sale of land are to be construed in the same manner as contracts generally. **40 O. Jur. 949, Sec. 44;** 66 C. J. 650, Sec. 207. Generally too, they are construed most strongly against a vendor and against a party drawing up the contract. 66 C. J. 651, Sec. 208. See also 26 C. J. S. 361, Sec. 100 f. In a vendor-purchaser dispute, the court said in **Monnett v. Monnett, 36 Oh St 30, 34-35:**

"* * * the words will be taken most strongly against the person employing them, especially where he is the only party subscribing to the contract. The words of obligation in a contract, 'are interpreted most strongly against the obligor, for it is presumed that he used those most favorable to his interests; and all doubtful terms or ambiguous words are to be construed against him. He who speaks, should speak plainly, or the other party may explain to his own advantage.' **State v. Worthington, 7 Ohio, pt. 1, p. 171.**"

See also, 40 O. Jur. 949, Sec. 44. Moreover, words are usually interpreted according to their common, ordinary meaning. 9 O. Jur. 395, Sec. 172; 9 C. J. 153, ·Sec. 3.

Focusing now on the written description—"one hundred dollars deposit on part sublot No. 8—187 feet to or through to Bernwood"—what does it mean?

Undoubtedly what is sold is a part of sublot 8. Because the parties agree on it, the part sold is on the east side of the sublot; and its southern boundary, fronting on Gates Mills Boulevard, is the 187 eastern-most feet of the sublot's southern boundary. The "187 feet" mean 187 feet in width. The 187 feet width is not a stationary thing. It is on the march. It

goes "to" something and it goes "through" something.

The 187 feet width goes through sublot 8. That is the only thing mentioned through which it could go. Besides, the rule of reason, as stated in 26 C. J. S. (Deeds) 358, Sec. 100 b., must be:

"In general, the words of description are taken to refer to land owned by the grantor, and a deed will not be construed to include other land unless the language used clearly evidences such an intention."

"Through" ordinarily means passage across and within the interior from one boundary to another boundary. Webster's New International Dictionary, (2nd ed., unabridged); Black's Law Dictionary (3rd ed.); 62 C. J. 947-48. Certainly it does not mean passage on the outside of something.

This 187 feet of width that cuts a swath through sublot 8 goes all the way "to" Bernwood Road. In its ordinary meaning, "to" conveys the idea of movement toward and actually reaching a specified object. 62 C. J. 1071. Nothing is said about narrowing or stopping this 187 feet of width before it reaches Bernwood. Nothing is said about the dividing line being straight. Nothing is said about the dividing line at all. The dividing line is created and automatically takes its position by laying out the width of the complete part sold.

Where the eastern side of sublot 8 jogs, the width of the sold parcel has to jog too; otherwise the whole 187 feet of width could not stay within and go through sublot 8 to Bernwood Road.

A reasonable construction of the vital instrument more than supports buyer's version. In fact, it would entitle buyer to 187 feet width in the small box. However, buyer claims only 150 feet, or one half of the width therein; and his redress must be limited thereto. Nothing in the instrument sustains seller's version. Buyer is entitled to the specific performance sought.

To these parties, both sincere, and to other sincere people who are tempted to word for themselves a "laymen's bargain" in a technical field, one can't help but say that in drawing this kind of contract a layman needs professional help. To attempt to draw it himself is like trying to take out his own appendix.