BOUNDY, APPELLANT, *v.* ARNOLD HAVILAND COMPANY, APPELLEE.

(No. 4-85-6—Decided September 4, 1986.)

*Cook & Troth* and *Norman E. Cook,* for appellant.

*Weaner, Zimmerman, Bacon & Yoder, Karl H. Weaner* and *Stephen F. Hubbard,* for appellee.

COLE, J. This is an appeal by the plaintiff, Mitchell Boundy, from a judgment of the Court of Common Pleas of Defiance County overruling the plaintiff's motion for summary judgment and granting the defendant's motion in an action for damages resulting from the breach of an employment contract.

On March 19, 1959, the defendant, Arnold Haviland Co., an Ohio corporation, first hired the plaintiff. The plaintiff worked for the defendant as an office employee without a written contract until February 1, 1966 when the plaintiff and the defendant entered into a written employment agreement. On February 17, 1976, the plaintiff and the defendant entered into a second written contract of employment which expressly modified the first agreement and was made retroactive to February 1, 1966. The plaintiff was discharged on February 18, 1983. On May 15, 1984, the plaintiff filed an action against the defendant alleging breach of the terms of the employment contract. Both parties filed motions for summary judgment and a hearing on the motions was held on February 11, 1985.

Upon consideration of the pleadings, answers to interrogatories, affidavits, written memoranda, and arguments of counsel, the trial court overruled plaintiff's motion for summary judgment, granted the defendant's motion for summary judgment, and dismissed the plaintiff's complaint.

The plaintiff timely appealed from this judgment, asserting two assignments of error as follows:

"I. The Common Pleas Court erred in granting defendant-appellee's motion for summary judgment.

"II. The Common Pleas Court erred in overruling plaintiff-appellant's motion for summary judgment."

The appellant does not separately argue each assignment of error in his brief, but instead, presents a single argument, contrary to Local Rule 7. We will consider the appellant's argument to be applicable to both assignments of error. Furthermore, because the assignments of error raise similar issues, we will consider them together.

The facts in this case are not in dispute. The issue raised by this appeal becomes the application of the law governing contract interpretation to those facts to determine whether or not the employment was for a definite term. There being no genuine issue of material fact, it must be determined in accordance with Civ. R. 56(C), whether or not the trial court correctly concluded that the appellee was entitled to judgment as a matter of law. The interpretation of a written contract is a question of law for the court. *Alexander* v. *Buckeye Pipe Line Co.* (1978), 53 Ohio St. 2d 241, 7 O.O. 3d 403, 374 N.E. 2d 146.

The appellant contends that the employment contract was for a definite term. The trial court concluded that the contract purported to be one for "permanent" or "life" employment and was thus terminable at will since the appellant did not provide any additional consideration for the contract.

The relevant provisions of the employment contract state:

"The Employer desires to continue to employ the Employee and to be assured of its rights to his services in such capacity as may be determined by its President and/or Board of Directors for the period commencing February 17, 1976, and ending on the date Mr. Boundy attains the age of 65 years, or any later date as may be mutually agreed upon, on the terms and conditions, and subject to the rights of earlier termination hereinafter set forth, and the Employee hereby agrees

to accept such employment on such terms and conditions.

"* * *

"2. The Employee hereby accepts such employment for the compensation hereinafter provided, and agrees to serve the company well and faithfully and to devote his best efforts to such employment, so long as it shall continue hereunder. During the period of such employment, the Employee shall devote his entire business time and attention to the performance of his duties, unless otherwise agreed.

"3. The compensation for the Employee's services shall not be less than the amount he now receives, and at such higher compensation as may be determined by the President of the Employer.

"4. The employment of Employee under the terms of this agreement shall cease and terminate at whichever of the following dates specified in paragraphs (a) and (b) shall first occur.

"(a) Upon attainment of age sixty-five (65) years by Employee, or at any later date as may be mutually agreed upon by the Employer and the Employee, or at such earlier date as he shall become unable, by reason of physical or mental disability, to continue the proper performance of his duties hereunder, or

"(b) In the event that the Employee shall fail to perform his duties hereunder, on a day thirty (30) days after the day on which the Employer shall mail written notice thereof to said Employee.

"* * *"

By its terms, the employment contract was to terminate upon the occurrence of one of the following conditions:

(1) the appellant's sixty-fifth birthday;

(2) by agreement of the appellee and appellant on a date after the appellant reached age sixty-five;

(3) a physical or mental disability prevented the appellant from performing his duties; or

(4) thirty days after the appellee mailed written notice to the appellant of his discharge for failure to perform his duties.

The contract was supported by adequate consideration with the appellant agreeing to devote his time and attention to the performance of his business duties and with the appellee agreeing to compensate the appellant accordingly.

The evidence shows that on February 18, 1983, when the appellant was discharged, he had not yet reached age sixty-five, he was not suffering from any mental or physical disability, and he had not received any notification that he was being discharged for failure to perform his duties.

While employment relationships are generally presumed to be employment-at-will relationships, this presumption may be rebutted with evidence that the terms of the employment contract manifest the parties' intention to bind each other for a specified term. *Henkel* v. *Education Research Council* (1976), 45 Ohio St. 2d 249, 255, 74 O.O. 2d 415, 418, 344 N.E. 2d 118, 121-122. See, also, *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150.

The terms of the contract, quoted above, evidence the parties' intention to bind each other for a definite, ascertainable term. Therefore, the parties' relationship may not be characterized as an at-will employment relationship. Failure of either party to adhere to the contract provisions constitutes a breach of the contract.

The appellee contends that the contract is intended to be for permanent or life employment. "Permanent employment" is defined as follows in 30 Corpus Juris Secundum (1965) 682, 684, Employment:

"It has been said that the phrase does not mean employment for life, or for any definite number of years, but is usually construed to mean employment for an indefinite period which may be severed by either party, especially where no consideration exists other than the services contracted to be rendered; but, by context, it may have a different meaning, and under special circumstances and conditions may mean continuous or indefinite employment, not terminable at the will of either party, as where the matter is regulated by custom and usage. The phrase 'permanent employment' has been held to mean a steady employment, a steady job, a position of some permanence, as contrasted with a temporary job or a temporary employment." (Footnotes omitted.)

The term "permanent employment" does not appear in the instant contract. In fact, the contract contains a definite termination date, that being when the appellant reaches age sixty-five. That date may be easily ascertained by determining the date of the appellant's sixty-fifth birthday.

The contract is also not one for "life employment" since the appellant will not necessarily reach the end of his life upon termination of the contract at age sixty-five. Nor will becoming age sixty-five necessarily terminate the appellant's working life. It is not unusual in today's society for individuals to continue their careers or pursue different careers after reaching age sixty-five. Finally, the term "life employment" does not appear in the contract.

The appellee contends that it did not intend to bind itself to pay wages to the appellant if the company permanently ceased operating due to poor economic condition. However, the employment contract contains no provisions for such a contingency. It has been held that an employer cannot terminate a contract of employment on the ground that adverse business conditions created financial difficulties for the employer. *Kelly* v. *Carthage Wheel Co.* (1900), 62 Ohio St. 598, 57 N.E. 984. See, also, 39 Ohio Jurisprudence 3d (1982) 71, Employment Relations, Section 40.

Additionally, the president of the Arnold Haviland Co. stated in his affidavit the reasons for first proposing the employment contract to the appellant:

"This affiant further states that the company's business showed a steady decline in the late 1960's and 1970's and to insure and protect the Plaintiff's job, the Defendant entered into an employment contract on or about February 1, 1966, with him and with other similarly situated employees to protect and preserve their jobs in the event the company would be sold."

Thus the president of the appellee company intended to enter a contract which would be binding on a future purchaser of the company for the duration of the contract. If the president intended for the contract to be binding on a prospective purchaser, it may be inferred that the president intended for the contract to be binding on the appellee company.

Since the plain language of the contract specifies a definite, ascertainable term of employment and since the appellant was not discharged pursuant to any of the terms of the contract, the appellee breached the contract when it discharged the appellant on February 18, 1983. The appellant's assignments of error are well-taken.

The judgment of the trial court is reversed and this court, then doing that which the trial court should have done, grants the motion for summary judgment of the plaintiff-appellant as to the liability of defendant to plaintiff for breach of contract, and overrules the motion for summary judgment of the defendant-appellee. The cause is

remanded for further proceedings as to the issue of damages.

*Judgment reversed and cause remanded.*

GUERNSEY, P.J., and MILLER, J., concur.