SCHUTTE et al., Appellants and Cross–Appellees,

v.

THE DANIS COMPANIES et al., Appellees and Cross–Appellants.

[Cite as *Schutte v. The Danis Cos.* (2001), 141 Ohio App.3d 824.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18388.

Decided March 16, 2001.

*Danny L. Cvetanovich* and *Nancy Manougian;* and *David C. Greer,* for appellants and cross-appellees.

*William C. Wilkinson* and *Scott A. King;* and *Scott A. Campbell,* for appellees and cross-appellants.

FREDERICK N. YOUNG, Judge.

Herbert T. Schutte and Matthew S. Ulliman are appealing a judgment of the Montgomery County Common Pleas Court granting appellees' motion for summary judgment and denying appellants' motion for summary judgment on several of their claims. The Danis Company, Danis Environmental Industries, and Thomas J. Danis ("appellees") are cross-appealing the judgment of the trial court that denied their motion for summary judgment on Counts VII, IV(h), and V of appellants' complaint and Count II of their counterclaim.

Schutte and Ulliman ("appellants") were employed by The Danis Company ("Danis"), an appellee/cross-appellant, for over fifteen years. In 1993, Thomas J. Danis, appellee/cross-appellant, entered into an employment contract with the appellants in which Schutte became president and Ulliman vice-president of Danis Environmental Industries, an appellee/cross–appellant ("Danis Environmental"). The employment contract included an incentive stock plan and provided that appellants shall be employed by Danis Environmental "for the five-year period commencing January 1, 1993 through December 31, 1997." Additionally, the employment contract provided that if Danis Environmental and the appellants had not agreed upon terms for a renewal of the employment contract, the appellants "shall revert to an employee-at-will following the expiration of the term of this [a]greement." As participants in the stock plan, appellants purchased or were awarded Danis stock, which Danis was obligated to repurchase at the time of termination of appellants' employment. The price that Danis was to pay for the repurchase of the appellants' stock was calculated by different formulas listed in the stock plan. The year of the termination determined the values used in the formulas, and the reason for the termination determined which formula was utilized.

Danis Environmental prospered between 1993 and 1997, becoming Danis's most profitable subsidiary and earning in excess of $45,000,000 in net income during this period. Pursuant to the stock plan, appellants purchased or were awarded a combined total of 4,997 shares of Danis stock from 1993 to 1997. In the latter part of 1997, appellants entered into good-faith negotiations with Danis,

who was acting on behalf of Danis and Danis Environmental, to renew their employment contracts. On December 31, 1997, appellants each received a letter from Danis Environmental, which read:

"You have been employed by [Danis Environmental] under an Employment Agreement dated September 6, 1994 ('Agreement'). The term of this Agreement expires at the close of business on December 31, 1997. * * * This letter shall serve as formal notice that the company hereby terminates your employment effective as of the expiration of the term of the Agreement * * *."

According to appellants, Danis attempted to terminate appellants in 1997 because Danis would receive the financial advantage of repurchasing appellants' stock for its lower 1996 year-end value rather than its higher 1997 year-end value. The difference between the year-end values on the 4,997 shares of Danis stock was $330,502.

Additionally, on December 30, 1994, each appellant entered into an award agreement with Danis. Under Section 4 of the award agreement, if Danis Environmental attained a certain level of earnings between 1993 and 1997, each appellant could purchase a certain number of Danis shares. Under Section 5 of the award agreement, regardless of Danis Environmental's financial performance, each appellant became eligible to purchase a certain percentage of the outstanding Danis shares in 1998. The shares appellants became eligible to purchase under Sections 4 and 5 of the award agreement are referred to as "special shares." Sections 4 and 5 of the award agreement contain two different provisions regarding appellants' right to purchase special shares. Sections 4(a) and 5(a) provide that in order for appellants to purchase special shares under these provisions they had to give notice of the exercise of their right within sixty days of having received the financial statement for the year ending December 31, 1997, and the purchase price must be "paid in cash" at the time notice is given. In contrast, Sections 4(b) and 5(b) provide that notice of the exercise of right had to be given within sixty days after termination of appellants' employment and no cash payment was required at the time of notice. However, Sections 4(b) and 5(b) are applicable only if the appellants' employment was terminated as a result of Danis Environmental's breach of the employment contract. The purchase price that appellants would pay for the special shares was calculated from different formulas for the 4(a) and 5(a) provisions than for the 4(b) and 5(b) provisions. Additionally, the number of special shares the appellants were entitled to purchase was different depending on whether the shares were purchased under the (a) provisions or the (b) provisions. When appellants were terminated, Danis was obligated to repurchase any stock that appellants had been awarded or purchased. Depending on the circumstances surrounding the termi-

nation, the repurchase price was either the preceding year value or an average of the previous, current, and next year values.

On January 22, 1998, appellants sent a letter to Danis Environmental stating that they wanted to be informed regarding the special shares because they intended to exercise their right to the special shares of Danis stock. On February 12, 2000, appellants, through their attorney, gave notice to McCann, the senior vice president and general counsel of Danis, of their exercise of their rights to purchase special shares pursuant to 4(b) and 5(b) of the award agreements and stated that this was without prejudice to their rights to special shares under 4(a) and 5(a). McCann and appellants exchanged correspondence on several occasions wherein McCann asserted that the appellants were only entitled to purchase special shares under 4(a) and 5(a) using the adjusted book value for 1996. During this period, closings were scheduled and canceled due to the parties' inability to reach an agreement. Although appellants still had not received financial information that they had requested in February, on April 13, 1998, McCann sent Danis's 1997 audited financial statements to appellants. The parties continued to disagree on the amount of shares appellants could purchase as well as the purchase and repurchase price. McCann responded to a proposed closing in May, stating:

"Danis will not attend the 'closing' which you purported to set in your letter dated May 4, 1998. * * * In the event that your clients properly exercise their rights to purchase certain Class B Common Shares as provided for in my letter dated April 13, 1998, Danis will set a closing as I described to you in that letter."

Additionally, on May 22, 1998, McCann wrote:

"I also will await to see if your clients exercise their special purchase rights as provided in my April 13 letter. As I have indicated to you on several occasions, your clients' failure to exercise their rights will result in a forfeiture of any rights which they may have with respect to the special purchase awards."

Believing that Danis would accept only its terms for appellants to exercise their rights to purchase special shares and as the sixty-day deadline was nearing on the 4(a) and 5(a) special shares, appellants filed this action on May 26, 1998. On August 3, 1998, appellees filed an answer and counterclaim seeking declaratory and injunctive relief as well as damages.

On March 22, 1999, based on the assertion that appellees had not wrongfully terminated the employment contract, appellees filed a motion for partial summary judgment on appellants' claims for breach of the employment contract, wrongful termination of employment in violation of Ohio's public policy, tortious inducement of breach of the employment agreements, a portion of the claim for breach of the stock plan and award agreements, tortious inducement of breach of

the stock plan and award agreements, declaratory judgment, violation of Ohio's securities laws, and reformation. Also, appellees moved for a partial summary judgment on appellants' claims regarding special shares, Count I of the counterclaim that the repurchase price Danis paid for appellants' regular shares, which was based on the 1996 preceding year value, was correct, and on Count II of appellees' counterclaim which sought a declaratory judgment that appellants had forfeited their rights to purchase special shares by failing to tender payment in cash in sixty days. Appellants filed a motion for partial summary judgment on their claims for breach of the employment contract, declaratory judgment, and on Count II of appellees' counterclaim. The trial court granted appellees' motion for partial summary judgment on the claims based on wrongful termination, as it found that appellants were not wrongfully terminated, and overruled appellants' motion for partial summary judgment. The trial court also overruled appellees' motion for summary judgment as it applied to appellants' right to purchase special shares. Appellants filed an appeal from the trial court's grant of partial summary judgment for the appellees and its denial of appellants' motion for partial summary judgment. Appellees filed a cross-appeal on the denial of its summary judgment motion regarding appellants' right to purchase special shares.

Appellants raise two assignments of error:

"1. The trial court erred in ruling that plaintiffs' employment agreements were not wrongfully terminated by defendants.

"2. The trial court erred in granting partial summary judgment to defendants and in overruling plaintiffs' motion for partial summary judgment."

Appellees/cross-appellants assert one assignment of error:

"The trial court erred in overruling the Danis defendants' March 22, 1999 partial summary judgment motion as to complaint Count VII, complaint Counts IV(h) and V as to the special shares, and counterclaim Count II, because it is undisputed that plaintiffs never tendered payment for the options they purported to exercise."

## I. Appellants' First Assignment of Error

Appellants argue that Danis Environmental wrongfully terminated appellants in breach of their employment contract by terminating them *in* 1997 when their contract assured them employment *through* 1997. We disagree.

Contract construction is utilized to determine the intent of the parties. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 132, 31 OBR 289, 290–291, 509 N.E.2d 411, 413. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Id.* at 130, 31 OBR at 289, 509 N.E.2d at 411. When common words are utilized in a contract,

they are given their ordinary meaning. *Fid. & Cas. Co. of New York v. Hartzell Bros. Co.* (1924), 109 Ohio St. 566, 143 N.E. 137. Ohio courts have previously determined that "through" is a common word and thus should be given its ordinary meaning, such as that found in a dictionary. *Cincinnati v. Diamond Light Co.* (1915), 4 Ohio App. 177, 185; *Desantis v. Zell* (C.P.1951), 45 O.O. 273, 276, 98 N.E.2d 68, 71. Webster's Second New College Dictionary defines the word "through" when applying to time as "[f]rom the beginning to the end of" and "[a]t or to the end of." Webster's Second New College Dictionary (1999) 1150.

The employment contract between appellants and Mr. Danis provided, "[Appellants] shall be employed by [Danis Environmental] for the five-year period commencing January 1, 1993 through December 31, 1997. * * * [Appellants] shall revert to an employee-at-will following the expiration of the term of this agreement." The letter that appellants received on December 31, 1997, notifying them of their termination stated:

"You have been employed by [Danis Environmental] under an Employment Agreement dated September 6, 1994 ('Agreement'). The term of this Agreement expires at the close of business on December 31, 1997. * * * This letter shall serve as formal notice that the company hereby terminates your employment *effective as of the expiration of the term of the Agreement * * *.*" (Emphasis added.)

■ Appellants argue that this letter, which terminated them in 1997, violated the employment contract, or, alternatively, that the employment contract entitled appellants to become employees at will for a brief moment in 1998 and that the termination violated the employment contract by preventing them from a moment of employment in 1998. The employment contract provision for a five-year term *through* December 31, 1997, when given its ordinary meaning, entitles the appellants to be employed until the end of 1997. Thus, the appellants' term of employment under the employment contract conferred that appellants could not be terminated during any moment of 1997. However, simply because the letter of termination was delivered in 1997 does not mean that appellants were terminated during 1997. The termination letter specified that the termination was effective at the expiration of the employment contract term. Since the employment contract term extended until the end of 1997, after every moment of 1997 had elapsed, the appellants were not terminated *in* 1997. Since the appellants were not terminated during 1997, they were not wrongfully terminated by a breach of the employment contract.

■■ Appellants' argument in the alternative that the contract's provision for appellants' reverting to employees at will in 1998, if a new contract was not

formed, entitled them to a brief period of employment in 1998 also fails. Ohio law holds that unless the contract provides otherwise, for employees employed on a year-to-year basis, their employment terminates at the end of the year unless renewed by the parties. *Nichols v. Univ. of Akron* (July 23, 1991), Franklin App. Nos. 90–AP–471 and 90–A–691, unreported, 1991 WL 139372. Further, in Ohio the concepts of employment at will and employment for a term are mutually exclusive. *Boundy v. Arnold Haviland Co.* (1986), 33 Ohio App.3d 156, 158, 514 N.E.2d 931, 933; *Nichols, supra.* "The identifying characteristic of an employment-at-will relationship is that either the employer or the employee may terminate the employment relationship for any reason which is not contrary to law." *Haynes v. Zoological Soc. of Cincinnati* (1995), 73 Ohio St.3d 254, 258, 652 N.E.2d 948, 950–951.

Appellants' argument asserts that they were entitled by their term employment contract to become employees at will for at least a moment of 1998. As stated in *Boundy* and *Nichols,* the concepts of employment at will and a contract for a term of employment are mutually exclusive. Since employment at will means that one has no guarantee of employment, it is impossible for someone to be guaranteed a period of time, however brief, as an employee at will. Therefore, appellants' employment contract with appellees could not have guaranteed appellants even an instant as employees at will. Thus, appellants' argument that they were entitled by the employment contract to become employees at will in 1998 fails. The trial court properly determined that the appellants were not wrongfully terminated. Appellants' first assignment of error is without merit and overruled.

## II. Appellants' Second Assignment of Error

Appellants argue that the trial court erroneously granted appellees' motion for partial summary judgment and overruled appellants' motion for partial summary judgment based only on its finding that appellants had not been wrongfully terminated, which appellants assert was an inaccurate finding. We disagree in part and agree in part.

### a. Wrongful Termination in Violation of Public Policy.

Ohio courts have never recognized a claim for the wrongful termination of a contract employee in violation of public policy. A claim of wrongful termination in violation of public policy has been permitted only where the employee was an employee at will. *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981; *Haynes, supra.* The Ohio Supreme Court has stated:

"*Greeley* provides an exception to the *employment-at-will* doctrine. * * * [I]n order for an employee to bring a cause of action pursuant to *Greeley, supra,* that employee must have been an employee at will. * * * [The collective bargaining agreement] specifically limited the power of the zoo to terminate [the employee] and, as a result, took her outside the context of employment at will. Because she was not an employee at will, she is outside the class of employees for whom *Greeley* provides protection." (Emphasis *sic.*) *Haynes,* 73 Ohio St.3d at 258, 652 N.E.2d at 951.

■ The trial court determined that since the appellants' employment was governed by an employment contract, the appellants could not pursue a claim for wrongful termination in violation of public policy as a result of the foreseeable expiration of their employment contract. We agree with the trial court. A claim for wrongful termination in violation of public policy has been permitted only for employees at will, not contract employees. Thus, since appellants entered into an employment contract with full knowledge of its future expiration date, we see no reason to extend the wrongful-termination-in-violation-of-public-policy claim to contract employees based on these circumstances. Also, we determined above that the appellants were not wrongfully terminated in violation of their employment contract but were terminated at the expiration of their contract. Therefore, the trial court properly granted summary judgment to the appellees on appellants' claim for wrongful termination in violation of public policy. Appellants' second assignment of error as it applies to the claim for wrongful termination in violation of public policy is without merit and overruled.

*b. Tortious Interference with Appellants' Employment Agreements*

■ The trial court correctly found that no genuine issues of material fact remained as to appellants' claim for tortious interference with an employment contract. An essential element of a claim for tortious interference with an employment contract is "the wrongdoer's intentional procurement of the contract's breach." *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 650 N.E.2d 863. Since we determined in the first assignment of error that no breach of the appellants' employment contract occurred, the tortious-interference claim must fail because a required element cannot be met. Thus, the trial court properly granted summary judgment on this claim. The second assignment of error is without merit and is overruled as to the claim for tortious interference with the employment agreements.

*c. Claims Regarding the Repurchase Price Danis is Obligated to Pay for Appellants' Shares*

■ Counts IV and V of appellants' complaint alleged that Danis had breached the stock plan by wrongfully interpreting the price and that Mr. Danis had

tortiously induced Danis to perform this breach. Section 10(a)(iv) of the stock plan provides that if the appellants' employment terminates for any reason other than retirement, death, disability, permitted voluntary termination, or sale of a business unit, the repurchase price Danis must pay for the appellants' stock is the preceding year's value. Additionally, Danis provided appellants with an offering memoranda that set one advantageous repurchase price if an appellant's employment terminated for retirement, sale of a business unit, death, disability, or an appellant's permitted voluntary termination of employment and a disadvantageous repurchase price if an appellant's employment terminated via a voluntary separation by an appellant in violation of an employment agreement or a termination by the employer for cause. Since there is no evidence that appellants voluntarily terminated their employment, only Section 10(a)(iv) applies to the situation, which was the section that Danis had asserted applied. Thus, no evidence exists that Danis breached the stock plan by asserting that the repurchase price was that provided under 10(a)(iv). Therefore, appellants' allegations that Danis breached the stock plan by wrongfully interpreting the repurchase price and that Mr. Danis tortiously induced Danis to breach the plan must fail, and the trial court properly granted summary judgment as to these claims. The second assignment of error as it applies to Counts IV and V of appellants' complaint is without merit and overruled.

 Additionally, the trial court granted summary judgment to appellees as to Count I of appellees' counterclaim. Count I of appellees' counterclaim sought a declaratory judgment that the amount of compensation Danis gave appellants for their shares in March 1998 was accurate. As stated above, the trial court determined that the repurchase price should be calculated by Section 10(a)(iv) of the stock plan, which provided for using the preceding year's value. Also, the trial court determined that the appellants were terminated *in* 1997 and thus that the year preceding the termination was 1996. Therefore, the trial court agreed with appellees' use of 1996's adjusted book value of a common share as a basis for calculating the repurchase price. However, as discussed in the first assignment of error, we determined that appellants were terminated at the end of their employment contract, which ended at the instant 1997 concluded. Since the employment contract provided that appellants were to be employed *through* December 31, 1997, appellants had to be employed during every moment of 1997 and could not be terminated *in* 1997. Since appellants were not terminated until every moment of 1997 had elapsed, the year preceding the appellants' termination was 1997, not 1996. Therefore, in calculating the repurchase price, 1997's adjusted book value of a common share should have been utilized, and the amount paid at the March 1998 closing may have been inaccurate. Thus, the trial court's grant of summary judgment in favor of the appellees on Count I of their

counterclaim was improper. The second assignment of error is sustained and the judgment is reversed and remanded as to Count I of the appellees' counterclaim.

### d. Count VIII—Appellants' Claim for Violations of R.C. 1707.41

Appellants allege in Count VIII of their complaint that appellees omitted crucial information from the offering memoranda and thereby violated R.C. 1707.41. Yet, the trial court found that even if the offering memoranda contained omissions, appellants would be impacted by these omissions only if the employment contract was breached, which it was not. The appellants' complaint at Count VIII provides:

"The [o]ffering [m]emoranda omitted to specify the circumstances in which [Danis] would repurchase Class B shares sold pursuant to the [o]ffering [m]emoranda in the event [Danis] breached employment agreements and wrongfully terminated employees purchasing the Class B shares. * * * The [o]ffering [m]emoranda omitted to include any description of the Company's obligation to repurchase Class B shares if an employee were wrongfully terminated by the Company."

Since the information which appellants allege was omitted was necessary only if Danis breached the employment contract, the appellants' claim must fail because we have already determined that the employment contract was not breached. Therefore, the trial court properly granted appellees' motion for summary judgment on appellants' Count VIII, and appellants' second assignment of error as to Count VIII is without merit and overruled.

### e. Appellants' Count IX—Reformation

Appellants seek reformation of the stock plan to comply with the parties' actual intent that the plan would not permit the appellees to profit from breaching the employment contract. However, since this court and the trial court have determined that the appellees did not breach the employment contract, this claim cannot survive. Thus, the trial court properly determined that since there was no breach of the contract, the appellants' claim for reformation must fail. Appellants' second assignment of error in regard to Count IX is without merit and overruled.

### III. Appellees' Cross–Appeal

As for the cross-appeal, appellees argue that the trial court erred by denying appellees' motion for summary judgment on Counts VII, IV(h), and V of appellants' complaint and on Count II of their counterclaim, which would have held that appellants' rights to purchase special shares had expired because

appellants failed to give notice or tender payment in cash by the deadline. We disagree.

Generally, in stock-option agreements, the optionee must strictly comply with the terms of the contract for exercising the option and failure to do so can result in a waiver of the option. *Civic Plaza Natl. Bank v. First Natl. Bank in Dallas* (C.A.8, 1968), 401 F.2d 193, 197–198. In order to file for a declaratory judgment, three requirements must be met: "(1) the action must fall within the 'spirit' of the Declaratory Judgments Act; (2) it must involve 'a real controversy between adverse parties' which is justiciable in nature; and (3) speedy relief must be necessary to avoid the impairment or loss of rights." *Mines v. Warren* (Apr. 26, 1991), Trumbull App. Nos. 90–T–4453 and 90–T–4454, unreported, 1991 WL 70115, citing *Swander Ditch Landowners' Assn. v. Joint Bd. of Huron & Seneca Cty. Commrs.* (1990), 51 Ohio St.3d 131, 135, 554 N.E.2d 1324, 1328–1329. In *Barlup v. Holloway* (1971), 25 Ohio App.2d 44, 54 O.O.2d 77, 266 N.E.2d 241, the Third District Court of Appeals found that the filing of a complaint requesting declaratory relief tolled the time period a widow had to elect to take her statutory share of her husband's estate.

In the instant action, appellants and appellees engaged in several discussions regarding the purchase of the special shares, specifically how many could be purchased and for what price. Appellees asserted that appellants were entitled to purchase special shares only under Sections 4(a) and 5(a) of the stock plan, while appellants wished to exercise options under Sections 4(b) and 5(b), which applied if the employment contract was breached. We determined above that the employment contract was not breached and, as a result, Sections 4(b) and 5(b) do not apply. Thus, Danis correctly asserted that the appellants could exercise an option to buy special shares only under Sections 4(a) and 5(a). These provisions had a requirement that the option be exercised within sixty days of having received the financial statements for 1997 and that exercise of the option be accompanied by tender of payment in cash. Since Danis sent appellants the financial statements on April 13, 1998, the sixty-day option period ran from this date until June 12, 1998.

Appellees assert that because payment was not tendered during this sixty-day period, appellants forfeited their right to exercise an option to buy special shares under Sections 4(a) and 5(a). Appellants assert several theories for why tender was unnecessary and thus their failure to tender did not result in the forfeiture of the option. However, we need not address these theories. On May 26, 1998, appellants filed this action and sought declaratory relief regarding their rights to purchase special shares. Although appellants may not have moved at the same time for an injunction or another form of equitable relief to extend the deadline for paying for the special shares, appellants sought declaratory relief from the

courts, and this tolls the sixty-day period. We do not view the distinction between injunctive relief and declaratory relief to be significant in this case.

Additionally, appellees argue that allowing the filing for declaratory relief to toll the option period will permit any optionee who lacks the funds to exercise his option to dispute some minor aspect of the option in order to postpone payment until after several years of litigation. However, the requirement for maintaining an action for declaratory relief that there must be a real controversy between adverse parties prevents such "created" minor disputes from surviving as an action for declaratory relief. In this case, a real controversy existed and appellants have not forfeited their right to exercise their option to purchase under Sections 4(a) and 5(a) because the sixty-day period is tolled. The appellees had an opportunity when this action originated to request the trial court to order appellants to tender payment to the court; thus, any complaint now that the appellants did not tender payment is an insufficient rationale to justify forfeiture of the appellants' option rights. This is particularly true when appellants' previous attorney on May 29, 1998, at the outset of this action, proposed in a letter to Danis that the parties reach an interim arrangement with a reservation of rights wherein a third party would hold cash from the appellants and a number of shares from the appellees. Thus, the trial court properly determined that the appellees were not entitled to summary judgment on Count II of their counter-claim, and this cross-appeal is without merit and overruled.

As for Schutte and Ulliman's appeal, the judgment of the trial court is affirmed in part and reversed in part. As for Danis, Danis Environmental, and Mr. Danis' cross-appeal, the judgment of the trial court is affirmed.

*Judgment accordingly.*

BROGAN and FAIN, JJ., concur.