Diana L. O'HARA, Plaintiff–Appellant,

v.

BOARD OF EDUCATION OF THE BROOKLYN CITY SCHOOL DISTRICT; Brooklyn City School District; James R. Garber, Superintendent; Marti Ferian, Treasurer, Defendants–Appellees.

Nos. 01–4269, 02–3093.

United States Court of Appeals, Sixth Circuit.

July 30, 2003.

BEFORE: BATCHELDER and CLAY, Circuit Judges, and SCHWARZER,* Senior District Judge.

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern

## MEMORANDUM OPINION

SCHWARZER, Senior District Judge.

Diana L. O'Hara brought this action against the Brooklyn City School District (the "District") and its Board of Education (the "Board"), James R. Garber, the District's Superintendent, and Marti Ferian, its Treasurer, alleging state and federal due process claims and tort claims arising out of her termination as the District's assistant treasurer. The district court granted summary judgment for defendants on the due process claims and judgment as a matter of law at the close of trial on the defamation claim against Ferian; it imposed sanctions on plaintiff's counsel and awarded attorneys' fees to defendant Ferian. The district court had jurisdiction under 28 U.S.C. § 1331 and § 1441(a). We have jurisdiction of the appeal under 28 U.S.C. § 1291.

We affirm the summary judgment on the state and federal due process claims because plaintiff did not have a cognizable property interest in her job. We affirm the judgment as a matter of law on the defamation claim because plaintiff failed to come forward with evidence that Ferian acted "in a wanton or reckless manner." We vacate the district court's orders imposing sanctions on plaintiff's counsel and awarding fees to Ferian's counsel because we find them to be an abuse of the court's discretion.

## I. THE DUE PROCESS CLAIMS

Plaintiff asserted a statutory due process claim under Ohio Revised Code § 3319, which provides that a public employee of the State of Ohio "whose job duties enable such employee to be considered as either a 'supervisor' or a 'manage-

District of California, sitting by designation.

ment level employee'" may not have her written employment contract terminated except in accordance with the procedures under Ohio Revised Code § 3319.16, which entitle her to notice and a right to appeal. She claims that she was a supervisor or management level employee, or that at least genuine issues of material fact remained as to her status as supervisor or management level employee. We review a grant of summary judgment *de novo* to determine whether, in the light most favorable to the nonmoving party, there is a genuine issue of material fact. *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 774 (6th Cir. 1996).

Section 4117.01(F), in relevant part, defines "supervisor" as an individual "who has authority ... to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other public employees, [or] to responsibly direct them." Section 4117.01(L), in relevant part, defines "management level employee" as an individual "who formulates policy .... who responsibly directs the implementation of policy, or who may reasonably be required on behalf of the public employer to assist in the preparation for the conduct of collective negotiations."

The district court found that plaintiff offered no evidence that she performed supervisory or managerial tasks, that the tasks she performed were clerical, that her oversight of the two clerks in her office was limited to clerical procedure, that she sought the Treasurer's consent before exercising discretion, and that she was not called on to participate in collective bargaining negotiations or in preparation for them.

Plaintiff does not dispute the substance of the district court's findings. As to whether she was a "supervisor," O'Hara argues that she was hired to help the District extricate itself from a fiscal emer-gency but she does not dispute that her direction of and assignment of tasks to the two clerks were limited to clerical procedure. Nor does she dispute that she kept the Treasurer apprised of changes in policies and procedures she made, and she offers no facts from which it could be found that she exercised independent judgment. Finally she points to no evidence indicating that she held authority to hire, fire, or discipline employees or that she responsibly implemented policy.

■ As to whether she was a "management level employee," the burden of her argument is that as assistant treasurer she "may reasonably be required" to assist in collective bargaining negotiations, but the only evidence she offered was that on two occasions in prior years the assistant treasurer had assisted in collective bargaining negotiations. Because it is undisputed that she did not assist in such negotiations or in preparation for them, the purely speculative possibility that she might in the future have been called upon to do so is insufficient to raise a triable issue. Plaintiff's job description, moreover, contains no reference to assisting in collective bargaining negotiations. We conclude that plaintiff failed to raise a genuine issue of material fact with respect to her claim to supervisor or management level employee status.

Alternatively, plaintiff contends that she is entitled to due process because she had a property interest by reason of having an employment contract with a duration clause. Under Ohio law, she argues, an employee hired for a term, as she was, is not an at-will employee, citing *Schutte v. The Danis Cos.*, 141 Ohio App.3d 824, 832, 753 N.E.2d 899 (2001). *Schutte*, a private sector case, is inapposite. Despite her contract, O'Hara's employment is governed by Ohio law applicable to public employees. Public employees are either classified or unclassified. Under state law,

classified employees may appeal an employment decision to the State Personnel Board of Review. Ohio Rev.Code § 124.32.8; *see Neamand v. Oberlin City Sch. Dist.*, 2001 WL 458676, at *2 (Ohio App. 9 Dist.2001) (unreported). It is undisputed, however, that plaintiff was an unclassified employee. *See* Ohio Rev.Code § 124.11(A). Unclassified employees are considered at-will employees not entitled to the procedural protections afforded classified employees.

Because plaintiff was not a supervisor or management level employee and was an at-will employee, she therefore had no property interest in her position. The summary judgment must be affirmed.

## II. THE DEFAMATION CLAIM

Plaintiff claims that Ferian defamed her by telling or suggesting to various persons that she had disclosed confidential information to the president of the classified employees union. The district court granted Ferian judgment as a matter of law on this claim at the close of evidence at trial. We review Rule 50 motions *de novo,* viewing the record evidence in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2109–10, 147 L.Ed.2d 105 (2000) (stating that "a court should render judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.").

As a public employee, Ferian was immune from tort liability unless his statements were made "with malicious purpose, in bad faith, or in a wanton or reckless manner." *See* Ohio Rev.Code § 2744.03(A)(6)(b). Plaintiff contends that Ferian's statements were reckless because he did not know whether they were true and did not attempt to verify them until after they had been made.

No reported Ohio decisions have directly addressed the issue what constitutes the requisite showing of recklessness in the context of defamation claims made by private figures. Ohio courts have defined wanton misconduct as "the failure to exercise any care whatsoever ... mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." *Cook v. City of Cincinnati,* 103 Ohio App.3d 80, 658 N.E.2d 814, 820 (Ohio App. 1st Dist.1995) (citations omitted). Plaintiff does not contend that Ferian knew or had reason to believe the statements he made were false; her proffered evidence that he did not verify them does not rise above the level of negligence. Mere failure to verify may constitute negligence but is not sufficient to support a finding of reckless misconduct. We find support in the analogous context of defamation claims by public figures in which a defendant's failure to investigate is insufficient to establish his bad faith. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 287, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (finding that recklessness requires proof that the defendant "in fact entertained serious doubts as to the truth of the publication"); *see also Schultz v. Newsweek, Inc.,* 668 F.2d 911, 918 (6th Cir.1982) (quoting *St. Amant v. Thompson,* 390 U.S. 727, 730–31, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *Bressler v. Fortune Magazine,* 971 F.2d 1226, 1246 (6th Cir.1992)). Because nothing in the record before us suggests that Ferian doubted the truth of his statements, the judgment on this claim must be affirmed.

## III. THE IMPOSITION OF SANCTIONS ON PLAINTIFF'S COUNSEL

The district court sanctioned plaintiff's counsel for canceling a deposition sched-

uled for September 12, 2001, for personal reasons. The court determined that sanctions were appropriate because of the inconvenience to the witness whose deposition had been twice before postponed by plaintiff's counsel. We review the imposition of sanctions for abuse of discretion. *Ridder v. Springfield,* 109 F.3d 288, 298 (6th Cir.1997), *cert. denied,* 522 U.S. 1046, 118 S.Ct. 687, 139 L.Ed.2d 634 (1988).

■ The district court cited no authority for the imposition of sanctions. Federal Rule of Civil Procedure 30(g) provides that sanctions may be imposed if the party noticing the deposition fails to attend and another party attends. Neither party attended the canceled deposition on September 12, 2001. Hence, Rule 30(g) does not authorize these sanctions. Nor does Rule 37(d) apply; it permits the court to impose sanctions against a party who fails to appear for the taking of his properly noticed deposition. In the absence of any supporting authority, the order imposing sanctions was an abuse of discretion and must be vacated.

## IV. THE AWARD OF ATTORNEYS' FEES TO FERIAN

After the filing of the summary judgment motion, plaintiff moved pursuant to Rule 41(a)(2) for voluntary dismissal without prejudice of counts one and three, the due process claims, against Ferian. By order of October 29, 2001, the court denied the motion and instead dismissed these counts with prejudice and ordered plaintiff to reimburse Ferian for reasonable fees and costs incurred in defending against them. The court deferred assessing fees and costs until the conclusion of the case. By order entered after judgment, the court, observing that Ferian was a prevailing party on all claims, awarded fees and costs incurred in the defense of count three in the amount of $2,985.51. We re-

view a district court's decision on a Rule 41(a)(2) motion for an abuse of discretion. *Duffy v. Ford Motor Co.,* 218 F.3d 623, 629 (6th Cir.2000).

■ By dismissing the claims with prejudice in response to plaintiff's request for dismissal without prejudice without giving plaintiff notice of its intention to dismiss with prejudice, an opportunity to be heard, and an opportunity to withdraw the request for voluntary dismissal and proceed with the litigation, the court abused its discretion. *United States v. 266 Tonawanda Trail ("One Tract"),* 95 F.3d 422, 425–26 (6th Cir.1996). Moreover, the award of attorney fees at the conclusion of the action after all claims had been disposed of on the merits was an abuse of discretion. Under the American Rule, awards of attorney fees are not appropriate except when authorized by statute or court rule. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 249–50, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The court cited none to support this award and we are aware of none. Accordingly, the order awarding fees must be vacated.

## CONCLUSION

For the reasons stated, we AFFIRM the summary judgment on the state and federal due process claims; we AFFIRM the judgment as a matter of law on the defamation claim: and we VACATE the district court's orders imposing sanctions plaintiff's counsel and awarding attorneys' fees to Ferian's counsel.

CLAY, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority opinion on all issues except for those relating to Plaintiff's due process claims. Plaintiff proffered sufficient evidence to create a genuine issue of material fact for trial as to

whether she functioned as a "supervisor" or "management level employee" for purposes of affording Plaintiff the procedural protections of Ohio Rev.Code § 3319.16 and Plaintiff proffered sufficient evidence to demonstrate that she had a protected property interest in her two-year non-teaching contract with the Board for purposes of affording Plaintiff constitutional protections. Thus, Plaintiff's claims for denial of due process under the Ohio Code and under the Fourteenth Amendment should not have been dismissed on summary judgment. I therefore respectfully dissent from the majority's opinion in this regard.

### A. Denial of Statutory Due Process Under Ohio Rev.Code § 3319.16

Under Ohio law, an at-will public employee has no entitlement to due process upon termination absent some specific statute to the contrary. *Wood v. Dorcas,* 126 Ohio App.3d 730, 711 N.E.2d 291, 296 (Ohio Ct.App.1998). Plaintiff, who was hired under a two-year non-teaching contract, seeks to avoid this principle by invoking Ohio Rev.Code § 3319, which provides that "[a]ny nonlicensed employee whose job duties enable such employee to be considered as either a 'supervisor' or a 'management level employee' as defined in section 4117.01 of the Revised Code" may not have his written contract "terminated by a board except pursuant to section 3319.16 of the Revised Code." Ohio Rev. Code Ann. § 3319.02(A)(1)(b) & (C) (Anderson 2002). Section 3319.16 provides the procedural process that must be afforded to an employee who qualifies under § 3319.02 before that employee may be terminated. Ohio Rev.Code Ann. § 3319.16 (Anderson 2002).

The majority correctly recognizes that § 4417.01(F) defines "supervisor" as

any individual who has authority, in the interest of the public employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other public employees; to responsibly direct them; to adjust their grievances; or to effectively recommend such action, if the exercise of the authority is not of a merely routine or clerical nature, but requires the use of independent judgment. . . .

Ohio Rev.Code Ann. § 4117.01(F) (Anderson 2002). The majority also properly recognizes that § 4117.01(L) defines "management level employee" in relevant part as

an individual who formulates policy on behalf of the public employer, who responsibly directs the implementation of policy, or who may reasonably be required on behalf of the public employer to assist in the preparation for the conduct of collective negotiations, administer collectively negotiated agreements, or have a major role in personnel administration. . . .

Ohio Rev.Code Ann. § 4117.01(L) (Anderson 2002). However, the majority fails to view the evidence proffered by Plaintiff in support of her claim that she functioned as a "supervisor" or "management level employee" as defined under these provisions in the light most favorable to her for purposes of surviving summary judgment.

For example, § 4117.01(F) lists a number of ways in which an employee may be considered a supervisor, and among those is the situation where the employee has the authority to discipline or responsibly direct another public employee. In this regard, Plaintiff brought forth evidence by way of Ferian's deposition testimony wherein Ferian stated that both he and Plaintiff disciplined an employee, Pat Smith, on several occasions and, after one

such disciplinary meeting, Plaintiff drew up a letter to Smith recapping the meeting and the points made therein. Ferian stated that he did not know whether Plaintiff placed the letter in Smith's personnel file. Ferian did state, however, that these counseling meetings with Smith were the result of both his and Plaintiff's observations as to Smith's unacceptable work performance. Ferian testified that he and Plaintiff approached Smith's discipline as "a team." (J.A. at 620.) Ferian further testified that on occasion Plaintiff would go into the main office to assist Smith in her work performance, and "that's usually the assistant treasurer's role to do that." (J.A. at 623.) Ferian claimed that he was not "completely aware" of times when Plaintiff alone counseled Smith about her poor performance. (J.A. at 623.)

In arguing that she functioned as a "management level employee" Plaintiff places much emphasis on her assisting the District out of fiscal emergency by way of eliminating, modifying, and creating new policies and procedures for the Treasurer's Office in order to achieve that end. (J.A. at 581, Plaintiff's Affidavit.) Plaintiff averred that in making the books auditable, she was required, among other things, to "correct[ ] the coding of expenditures, correct[ ] the coding of receipts, work[ ] on bank reconciliations, and get [ ] grants cleaned up with the [Ohio] Department of Ed[ucation]'s help...." Plaintiff claims that here efforts in this regard constituted implementation of the Board's policy to removing the District from fiscal emergency. (J.A. at 581.) Although the district court was not persuaded by Plaintiff's claims, finding these tasks to be merely routine or clerical in nature, the a jury should be allowed to make that determination after hearing the evidence. Indeed, no one disputes that Plaintiff was hired to assist the District out of its fiscal emergency, and nothing has been offered to indicate that the accounting clerks performed these tasks.

The evidence also indicates that a question of fact remains as to whether Plaintiff functioned as a "management level employee" by way of her participation in collective bargaining negotiations, if needed. Under § 4117.01(L), an employee functions as a "management level employee" if that employee *"may reasonably be required on behalf of the public employer* to assist in the preparation for the conduct of collective negotiations, [or] administer collectively negotiated agreements...." Ohio Rev.Code § 4117.01(L) (emphasis added). Plaintiff offered testimony from Ferian in which Ferian indicated that during the 1994 collective bargaining negotiations, the District's negotiating team consisted of "[t]he superintendent, the business manager, the assistant superintendent, building principals and the treasurer and assistant treasurer were invited as needed." (J.A. at 593.) Thus, Plaintiff proffered evidence to demonstrate that she "may [have] reasonably be[en] required on behalf of the public employer to assist in the preparation for the conduct of collective negotiations" for purposes of qualifying as a "management level employee." *See* Ohio Rev.Code Ann. § 4117.01(L).

The majority, like the district court, is not persuaded by Plaintiff's argument in this regard, concluding that because Plaintiff was never actually called upon to participate in negotiations, her claim is merely speculative. However, this conclusion not only fails to view the evidence in the light most favorable to Plaintiff, it fails to heed the express word of § 4117.01(L). Under § 4117.01(L), Plaintiff did not have to demonstrate that she actually participated in the negotiations, she only had to demonstrate that she "may [have] reasonably be[en] required" to assist in the prep-

aration for the negotiations. Ohio Rev. Code Ann. § 4117.01(L). Plaintiff brought forth such evidence, particularly for purposes of surviving summary judgment, by way of Ferian's testimony indicating that the assistant treasurer had been called upon to participate in negotiations in the past. Indeed, based upon this testimony, a reasonable juror could conclude that the likelihood existed that Plaintiff may have likewise been called upon to participate in negotiations.

Plaintiff need only show that she functioned as a "supervisor" or a "management level employee," as those terms are defined under § 4117, in order to avail herself of the protections of § 3319. Thus, where Plaintiff proffered evidence sufficient to create a genuine issue of material fact as whether she functioned both as a "supervisor" or "management level employee," it is particularly clear that the district court erred in dismissing Plaintiff's claim on summary judgment.

Although not discussed by the majority, Plaintiff's claim should also proceed against Superintendent Garber as well. Garber makes the argument that he was sued solely in his official capacity and therefore cannot be found liable because suing a public official in his official capacity for acts performed within the scope of his authority is equivalent to suing the governmental entity under *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Garber argues in the alternative that even if he had been sued in his individual capacity, he still cannot be found liable under *Graham* inasmuch as Plaintiff failed to demonstrate that Garber caused Plaintiff to suffer a deprivation of a constitutional right. Said differently, although not expressly by Garber, he enjoys qualified immunity because he did not have the power to terminate Plaintiff. According to Garber, only the

Board had the authority to terminate Plaintiff's employment.

Garber's contention that he was sued by Plaintiff solely in his official capacity flies in the face of Plaintiff's complaint as well as Garber's own written word. In paragraph four of Plaintiff's complaint, she expressly states that "Garber is sued in both his official and individual capacities." (J.A. at 21, Plaintiff's Complaint). And, in Garber's memorandum in support of his motion for summary judgment, he expressly states that "Plaintiff filed this lawsuit against Garber in both his individual and official capacities...." (J.A. at 464, Garber's Memorandum in Support of his Motion for Summary Judgment.) Although it is true that the caption to Plaintiff's complaint does not indicate that Garber is being sued in his individual and official capacities, under this Court's jurisprudence, Garber was clearly on notice that he was being sued in his individual capacity, and thus Garber cannot now claim otherwise. *See Moore v. City of Harriman,* 272 F.3d 769, 772–75 (6th Cir.2001) (*en banc*) (affirming that in this circuit, a "course of proceedings" test is used to determine whether § 1983 defendants have received notice of the plaintiff's intent to hold them personally liable) (citing *Abdur–Rahman v. Mich. Dep't of Corrs.,* 65 F.3d 489, 491 (6th Cir.1995); *Pelfrey v. Chambers,* 43 F.3d 1034, 1038 (6th Cir. 1995)).

To the extent that Garber was sued in his individual capacity, a question of fact remains as to whether he would be immune under Ohio law for providing Plaintiff with a letter of termination. *See* Ohio Rev.Code Ann. § 2744.03(A)(6) (stating that a government employee is immune from liability unless his acts or omissions "were with malicious purpose, in bad faith, or in a wanton or reckless manner"). In other words, questions of fact remain as to

whether Garber acted with a malicious purpose, in bad faith, or in a wanton or reckless manner.

## B. Denial of Constitutional Due Process Under the Fourteenth Amendment

When considering a procedural due process claim under the Fourteenth Amendment to the Constitution, a court must first determine whether the interest at stake is within the Fourteenth Amendment's protection of liberty or property. *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "Thus, in a § 1983 due process claim for deprivation of a property [or liberty] interest, a plaintiff must first show a protected property [or liberty] interest. Only after meeting this requirement can the plaintiff prevail by showing that such interest was abridged without appropriate process." *Ferencz v. Hairston,* 119 F.3d 1244, 1247 (6th Cir.1997) (internal quotation marks and citation omitted). "A property interest can be created by state statute, a formal contract, or a contract implied from the circumstances." *Ludwig v. Bd. of Trs. of Ferris State Univ.,* 123 F.3d 404, 409 (6th Cir.1997). "An injury to a person' reputation, good name, honor, or integrity constitutes the deprivation of a liberty interest when the injury occurs in connection with an employee's termination." *Id.*

For the reasons set forth in the discussion of the previous issue, questions of fact remain as to whether Plaintiff could be considered a "supervisor" or "management level employee" for purposes of satisfying § 3319.02 and § 3319.16; thus, Plaintiff may have also established a claim for denial of her Fourteenth Amendment right to due process, inasmuch as she claims that she was not afforded all the process that she was due under § 3319.16. *See Ludwig,*

123 F.3d at 409 ("A property interest can be created by state statute, a formal contract, or a contract implied from the circumstances.").

In addition, Plaintiff may have established a property interest in the "non-teaching" contract that she had with the Board. Under Ohio law, when an employment agreement, either expressly or by implication, is for a duration of time, and the employee is discharged before the expiration of that period "without justifiable cause, a right of action accrues to him against the employer for breach of contract." *Henkel v. Educ. Research Council of Am.,* 45 Ohio St.2d 249, 344 N.E.2d 118, 120 (Ohio 1976). Thus, the district court's finding that the duration of employment clause as set forth in Plaintiff's contract failed to provide Plaintiff with any property rights is erroneous. *See id.* The Resolution under which Plaintiff was hired, by its label and express terms, clearly was a bargained for agreement between Plaintiff and the Board, where the Board offered to employ Plaintiff as Assistant Treasurer for a period of two years, and Plaintiff agreed to perform as such for an agreed upon amount of money or consideration. Therefore, the district court erred in dismissing Plaintiff's claim at summary judgment where it appears that Plaintiff has established a property interest by way of her employment contract, thus allowing this claim to go forward. *See Ludwig,* 123 F.3d at 409.

As to Superintendent Garber, a proper inquiry should be conducted as to whether Garber would be protected under qualified immunity. A government official performing a discretionary function is entitled to qualified immunity from suit for civil damages unless his actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S.

800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). An analysis into whether qualified immunity attaches requires the application of the Supreme Court's sequential process set forth in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). As *Saucier* makes clear, the "threshold question" in a qualified immunity analysis is whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Id.* at 201 (citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

Although Garber contends that he cannot be found to have deprived Plaintiff of a constitutional right inasmuch as only the Board had the authority to actually terminate Plaintiff's employment, this contention is short-sighted and fails to consider Garber's vital role in Plaintiff's termination process. It was Garber who drafted the termination letter, posed the ultimatum to Plaintiff, and requested that the Board affirm Plaintiff's termination. Under *Saucier,* it would appear that Plaintiff has established that Garber's actions may have violated her due process interests. *Id.* at 201. However, questions of fact remain as to whether Plaintiff has established those rights; therefore, this issue should be remanded for an inquiry into the second step of the *Saucier* analysis, particularly when the district court failed to engage in any meaningful analysis under the *Saucier* standard. *See id.*

## C. Conclusion

For the above-stated reasons, I would reverse and remand the district court's order dismissing Plaintiff's state and federal procedural due process claims.